COPY

BLOOD HURST & O'REARDON, LLP
TIMOTHY G. BLOOD (149343)
THOMAS J. O'REARDON II (247952)
701 B Street, Suite 1700
San Diego, CA 92101
Telephone: 619/338-1100
619/338-1101 (fax)
tblood@bholaw.com
toreardon@bholaw.com

BALKAN & PATTERSON, LLP
JOHN PATTERSON
601 S. Federal Highway, Suite 302
Boca Raton, FL 33432
Telephone: 561/750-9191
561/750-1574 (fax)
john@balkanpatterson.com

Attorneys for Plaintiff Lee Birnbaum

FILED
CLERK, U.S. DISTRICT COURT

NOV 1 5 2012

CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LEE BIRNBAUM, on Behalf of Himself, and All Others Similarly Situated, | Case No. CV12·9810 SJO (AJWx) |
| Plaintiff | CLASS ACTION |
| vs. | CLASS ACTION COMPLAINT FOR: |
| ONEWEST BANK, FSB, | 1. BREACH OF CONTRACT; 2. BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; |
| Defendant. | 3. PROMISSORY ESTOPPEL; and 4. VIOLATION OF THE UNFAIR COMPETITION LAW, Business and Professions Code §17200 et seq. |
| | DEMAND FOR JURY TRIAL |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

BLOOD HURST & O'REARDON, LLP

00052264

CLASS ACTION COMPLAINT

Plaintiff Lee Birnbaum ("Plaintiff") by and through his attorneys, bring this action on behalf of himself, all others similarly situated and the general public against Defendant OneWest Bank, FSB ("Defendant" or "OneWest").

## NATURE OF THE ACTION

1.     Plaintiff brings this action on behalf of himself and a class of similarly situated homeowners challenging OneWest's systematic failure to honor its contractual promises and obligations relating to mortgage modifications.

2.     In 2009, OneWest began implementing a standardized mortgage modification program by offering Plaintiff and the other Class members' adhesion contracts known as a "Trial Period Plan" contract (the "TPP Contract"). A true and correct copy of Plaintiff's TPP Contract is attached as Exhibit A. Under the TPP Contract, if Plaintiff and the other Class members met certain conditions (including underwriting requirements) and fulfilled certain obligations, OneWest promised – and was contractually obligated – to offer them permanent loan modifications. Plaintiff and the other Class members met the conditions and fulfilled all of the TPP Contract's obligations, but OneWest breached the TPP Contracts by refusing to offer permanent loan modifications.

3.     As a condition of OneWest's TPP Contract, borrowers were required to meet eligibility guidelines, including "being unable to afford mortgage payments" under their current mortgages and as a result, "either in default or…in default under the Loan Documents in the near future."  Ex. A (TPP Contract) at §1(A).  They also had to meet underwriting requirements for the permanent modification, which was to offer a lower, but competitive interest rate.  Plaintiff and every Class member met the eligibility guidelines for receiving the TPP Contract, were offered a TPP Contract, accepted the TPP Contract and fulfilled all of their obligations under the TPP Contract.

00052264

4.     In return, OneWest's TPP Contracts provide that if a borrower meets all of the requirements, receives a TPP Contract and complies with the terms of the TPP Contract, OneWest "will send me a [permanent] Modification Agreement for my signature which will [permanently] modify my Loan Documents as necessary to reflect this new payment amount and waive any unpaid late charges accrued to date." Ex. A (TPP Contract) at §3. Likewise, the very first sentence of OneWest's TPP Contract obligates OneWest to provide a permanent mortgage modification loan offer if borrowers fulfill specific conditions:  "If I am in compliance with this Loan Trial Period and my representations in Section 1 continue to be true in all material respects, then the Lender will provide me with a Loan Modification Agreement…that would amend and supplement (1) the Mortgage on the Property, and (2) the Note secured by the Mortgage." *Id.* at p.1.

5.     Plaintiff and the other Class members complied with all of the terms of the TPP Contract, but, in breach of the terms of the TPP Contracts, OneWest failed to send them permanent modification agreements to sign.  Because of OneWest's breach, Plaintiff and Class members have been injured, including suffering negative credit consequences and some losing their homes through foreclosure sales that should have never occurred.

6.     Plaintiff brings this action for violations of the Unfair Competition Law, breach of contract, breach of the covenant of good faith and fair dealing, and promissory estoppel on behalf of himself and other similarly situated borrowers who entered into a TPP Contract with OneWest in California, and, despite complying with all terms of the TPP Contracts, did not receive from OneWest an offer for permanent loan modification.  Plaintiff seeks damages, restitution, and injunctive relief for himself and the other members of the Class.

BLOOD HURST & O'REARDON, LLP

00052264

## JURISDICTION AND VENUE

7.     This Court has original jurisdiction pursuant to 28 U.S.C. §1332(d)(2).  The matter in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000 and is a class action in which members of the Class of plaintiffs, which exceeds one hundred persons, are citizens of states different from OneWest.  Further, greater than two-thirds of the Class members reside in states other than the state in which OneWest is a citizen.

8.     Venue is proper in this Court pursuant to 28 U.S.C. §1391 in that many of the acts and transactions giving rise to this action occurred in this district and because:

(a)     Defendant OneWest Bank, FSB is headquartered within this district;

(b)     Defendants are authorized to conduct business in this district and have intentionally availed themselves of the laws and markets within this district through the promotion, marketing, and sale of their mortgage-related products and services in this district;

(c)     Defendants do substantial business in this district; and

(d)     Defendants are subject to personal jurisdiction in this district.

## PARTIES

9.     Plaintiff Lee Birnbaum is, and at all times mentioned in this complaint was a resident of Florida.  As a direct result of OneWest's unlawful and unfair conduct described herein, including its breach of contract, Plaintiff suffered injury in fact and lost money and property.

10.     Defendant OneWest Bank, FSB is a mortgage lender with its headquarters at 888 East Walnut Street, Pasadena, CA 91101.  OneWest, "Southern California's hometown bank," has 74 retail branches, all in Southern California.  OneWest has total assets of $25 billion and $14 in deposits.  At all times relevant to this lawsuit, OneWest has conducted business in this district,

00052264

BLOOD HURST & O'REARDON, LLP

throughout California and nationwide.   According to an Office of Thrift Supervision ("OTS") consent order executed by OneWest and effective April 13, 2011, OneWest services a portfolio of approximately $141 billion dollars in residential mortgage loans.  The conduct at issue substantially emanates from OneWest's headquarters and offices in California.   For example, from OneWest's Pasadena offices, OneWest and its employees managed its HAMP operations, including generating and sending trial period offers and packages, denial letters, and income solicitations.

11.   OneWest began operations in March 2009 when, led by a group of private equity investors including Steven Mnuchin, John Paulson, and George Soros, it completed the purchase of the assets and operations of IndyMac Bancorp., Inc. ("IndyMac") from the Federal Deposit Insurance Corporation ("FDIC").  Since the acquisition, OneWest has operated the national mortgage banking business of IndyMac.  As a condition of the sale of IndyMac, OneWest agreed to continue the FDIC's existing loan modification program.  Prior to its acquisition by OneWest, IndyMac's headquarters and principal executive offices were located in Pasadena, California.  Through its main subsidiary, IndyMac, F.S.B., IndyMac made, purchased and sold residential mortgage loans. IndyMac's business also included servicing mortgages for Fannie Mae and Freddie Mac.  On July 11, 2008, the OTS closed the bank and placed it under FDIC receivership.  IndyMac filed for bankruptcy protection in late July 2008. Before its failure, IndyMac was one of the largest savings and loan associations in California and the seventh largest mortgage originator in the United States.

## FACTUAL BACKGROUND

### *Congressional Response to National Foreclosure Crisis*

12.   For more than five years, the United States has been in a foreclosure crisis.  In the five years preceding January 2012, banks pushed over 4 million homes through the foreclosure process.  As of April 2012, nearly two million

BLOOD HURST & O'REARDON, LLP

homeowners were behind in their mortgage payments by at least 90 days, but not yet in foreclosure.  Loan servicers like defendant make enormous amounts of money when borrowers are in default or foreclosure, providing a tremendous incentive for OneWest to engage in the conduct alleged here.

13.     Increased foreclosures have a detrimental effect on borrowers who are at serious risk of losing their homes.  Foreclosures also have a negative impact on the surrounding neighborhoods that suffer decreased property values. In addition, municipalities lose tax revenue as a result of foreclosures.

14.     On October 3, 2008, Congress passed the Emergency Economic Stabilization Act of 2008 and amended it on February 17, 2009, with the American Recovery and Reinvestment Act of 2009 (together, the "Act").   12 U.S.C. § 5201 *et seq.* (2009).

15.     The purpose of the Act is to grant the Secretary of the Treasury the authority to restore liquidity and stability to the financial system and ensure that such authority is used in a manner that "protects home values" and "preserves homeownership."  12 U.S.C. § 5201.

16.     The Act grants the Secretary of the Treasury the authority to establish the Troubled Asset Relief Program, or TARP.  12 U.S.C. § 5211. Under TARP, the Secretary may purchase or make commitments to purchase troubled assets from financial institutions.  *Id.*

17.     In exercising its authority to administer TARP, the Act mandates that the Secretary "shall" take into consideration the "need to help families keep their homes and to stabilize communities."  12 U.S.C. § 5213(3).

18.     The Act further mandates, with regard to any assets acquired by the Secretary that are backed by residential real estate, that the Secretary "shall implement a plan that seeks to maximize the assistance for homeowners" and use the Secretary's authority over servicers to encourage them to take advantage of programs to "minimize foreclosures."  12 U.S.C. § 5219.

19.    The Act grants authority to the Secretary of the Treasury to use credit enhancement and loan guarantees to "facilitate loan modifications to prevent avoidable foreclosures." *Id.*

20.    The Act imposes parallel mandates to implement plans to maximize assistance to homeowners and to maximize foreclosures.  12 U.S.C. § 5220.

21.    On February 18, 2009, pursuant to their authority under the Act, the Secretary of the Treasury and the Director of the Federal Housing Finance Agency announced the Making Home Affordable program.

22.    One aspect of this program is known as the Home Affordable Modification Program, or "HAMP."

23.    HAMP is funded by the federal government primarily with TARP funds.  The Treasury Department has allocated at least $75 billion to HAMP, of which at least $50 billion is TARP money.

24.    Under HAMP, the federal government incentivizes participating servicers to enter into agreements with struggling homeowners that will make adjustments to existing mortgage obligations in order to make the monthly payments more affordable.   Servicers receive $1,000 for each HAMP modification and an additional $500 for modification of yet to be delinquent loans, which were in clear danger of imminent default.

### Servicer Participation in HAMP

25.    The members of the mortgage industry that perform the actual interface with borrowers – including such tasks as payment processing, escrow maintenance, loss mitigation and foreclosure – are known as "servicers." Servicers typically act as the agents of the entities that hold mortgage loans. OneWest is one of the nation's largest loan servicers, processing more than $1 billion in mortgage loans.

26.    On August 18, 2009, OneWest executed a Servicer Participation Agreement ("SPA") with the federal government.   By executing the SPA,

BLOOD HURST & O'REARDON, LLP

OneWest became a participating servicer in HAMP, and agreed to perform specified loan modification and other foreclosure prevention services.

27.    OneWest's SPA requires it to modify loans, and identifies objective criteria to determine which loans are eligible for modification and how the loans should be modified.  The SPA incorporates all previous guidelines, procedures, instructions and communications, including all "Supplemental Directives" issued by the United States Treasury Department, Fannie Mae and Freddie Mac in connection with the duties of a participating servicer.

### OneWest's TPP Contract

28.    A HAMP mortgage modification consists of two stages.  First, a Participating Servicer is required to gather a borrower's financial and other relevant information and, if the borrower qualifies, offer the borrower a TPP Contract.

29.    As a condition of entering the TPP Contract, in Section 1.A. of the TPP Contract, OneWest requires the borrower to submit a "Hardship Affidavit" and certify that he or she cannot afford his or her mortgage payments:

　　1. **My Representations**.  I certify, represent to Lender and agree:

　　　　A. I am unable to afford my mortgage payments for the reasons indicated in my Hardship Affidavit and as a result, (i) I am either in default of believe I will be in default under the Loan Documents in the near future, and (ii) I do not have access to sufficient liquid assets to make my monthly mortgage payments now or in the near future[.]

Ex. A (TPP Contract); *see also id.* (first sentence of paragraph two similarly states, "I am providing confirmation of the reasons that I cannot afford my mortgage payment and documents to permit verification of all of my income…to determine whether I qualify for the offer described in this Plan.").

00052264

BLOOD HURST & O'REARDON, LLP

30.     In addition to certifying that they cannot afford their mortgage payments under their current mortgage (Ex. A at §1.A.), the terms of OneWest's TPP Contract offer also require that borrowers "certify, represent to Lender and agree" (including making certain representations under penalty of perjury) that:

> B. I live in the Property as my principal residence, and the Property has not been condemned;

> C. There has been no change in the ownership of the Property since I signed the Loan Documents;

> D. I am providing or already have provided documentation for **all** income that I receive (except that I understand that I am not required to disclose any child support or alimony that I receive, unless I wish to have such income considered to qualify for the Offer);

> E. Under penalty of perjury, all documents and information that I have provided to Lender pursuant to this Plan, including the documents and information regarding my eligibility for the program, are true and correct; and

> F. If Lender requires me to obtain credit counseling, I will do so.

Ex. A (TPP Contract) at §1 (emphasis in original).  Before entering the TPP Contract with OneWest, Plaintiff and Class members previously were not required to provide OneWest with the above-mentioned documentation.

31.     In addition to the newly-agreed-upon terms and conditions stated above, OneWest's TPP Contract also requires borrowers to create and fund an escrow account, and make three or four consecutive monthly "Trial Period Payments" at a revised rate designed to keep the borrower in his or her home. Ex. A (TPP Contract) at §2; *see also id.* at §4.C (the parties' agreement, if any, to waive escrow item payments is deemed revoked under the TPP Contract).  In its TPP Contracts with Plaintiff and Class members, OneWest provides a detailed

BLOOD HURST & O'REARDON, LLP

00052264

description of the dates and manner by which borrowers must submit Trial Period Payments.  According to the TPP Contract, the monthly Trial Period Payment amount is an estimate of the monthly payment that will be required under the terms of the permanent mortgage modification. *Id.* at §2.

32.    If OneWest terminates the TPP Contract, the borrower's Trial Period Payments are to be applied to the mortgage and OneWest does not have to refund any portion of the borrower's payments. *Id.* at §2.E.

33.    According to its TPP Contracts, OneWest "will suspend any scheduled foreclosure sale" provided that the borrower meets the obligations under the TPP Contract. *Id.* at §2.B.

34.    OneWest's TPP Contract states that OneWest will extend offers for permanent mortgage modifications to those homeowners who agree to its terms and conditions, execute the TPP Contract, and fulfill its documentation and payment requirements.

35.    The first sentence of the TPP Contract that OneWest sent to Plaintiff and Class members states that, "If I am in compliance with this Loan Trial Period and my representations in Section 1 continue to be true in all material respects, then the Lender will provide me with a Loan Modification Agreement, as set forth in Section 3, that would amend and supplement (1) the Mortgage on the Property, and (2) the Note secured by the Mortgage."  Ex. A (TPP Contract) at p.1; *see also id.* at §3 (OneWest "will send me a [permanent] Modification Agreement for my signature which will [permanently] modify my Loan Documents as necessary to reflect this new payment amount and waive any unpaid late charges accrued to date.").

36.    Hence, if a homeowner executes the TPP Contract, complies with all documentation and representation requirements, and makes all three timely Trial Period Plan monthly payments, the second stage of the HAMP process is

Blood Hurst & O'Reardon, LLP

triggered, and OneWest must provide the homeowner a new contract with a permanent loan modification.

37.   Plaintiff and Class members have fully performed under the terms of the agreed-upon TPP Contract, but OneWest has failed to live up to its end of the bargain and offer permanent loan modifications as required.  In the process, OneWest has prevented Plaintiff and Class members from pursuing other avenues of resolution, including using the money put towards the TPP Contract's "Trial Period Payments" to fund bankruptcy plans, relocation costs, short sales or other means of curing their default.

38.   OneWest has routinely failed to live up to its end of the TPP Agreement and offer permanent modification to homeowners.  In February 2010, the US Treasury reported that OneWest's parent company had 112,200 HAMP-eligible loans in its portfolio.  Of these loans, just 3,087 were granted permanent modifications (approximately 2.75%) even though many more homeowners, including plaintiff, had made the payments and submitted the documentation required by the TPP Agreement.  In August 2012, the US Treasury reported that OneWest had 19,857 loans that were 60+ days delinquent and otherwise eligible for HAMP trial period modifications, but had only 2,488 loans in active HAMP trial period modifications.

39.   In the process of systematically making false promises to borrowers about what steps are required to receive a permanent mortgage modification offer, OneWest makes negative reports to credit agencies, collects months of Trial Period Payments (including escrow payments), and requires its borrowers to submit detailed financial information, make statements under penalty of perjury, and agree to mandatory credit counseling.

40.   Plaintiff does ***not*** allege that by extending the TPP Contract offer, OneWest agrees to modify the "Loan Documents" (defined in the TPP Contract as the Mortgage and the Note) regardless of eligibility.  *See* Ex. A (TPP

BLOOD HURST & O'REARDON, LLP

Contract) at §2.G.   Rather, this action is about OneWest's failure to provide permanent modification offers for Plaintiff and Class members to sign after Plaintiff and Class members have met all of the requirements and fulfilled all of the conditions. *Id.* at p.1, §3.

## FACTS RELATING TO NAMED PLAINTIFF

41.   On or about February 27, 2006, Plaintiff Lee Birnbaum executed and delivered to OneWest Bank, FSB a promissory note payable to OneWest in the amount of $570,000.00, with interest at the adjustable annual rate.

42.   On February 27, 2006, as security to OneWest for payment of the note, Plaintiff executed a Mortgage for OneWest as beneficiary that real property located at 5124 Rue Vendome, Lutz, Florida.  The property is more specifically described as Lot 14, Cheval West Village Thirteen, according to the plat thereof as recorded in plat book 80, page 41-1 through 41-4 public records of Hillsborough County, Florida.   The improvements thereon being commonly known as 5124 Rue Vendome, Lutz, Florida 33558.  Being the same lot or parcel of ground which by deed dated August 7, 2003 and recorded among the land records of Hillsborough County in book 13002 page 1078, was granted and conveyed by Primacy Closing Corporation, unto Lee M. Birnbaum and Kimberly A. Birnbaum, husband and wife.

43.   During 2009, Mr. Birnbaum began to encounter financial difficulties and he was unable to continue to meet his monthly obligations to pay his mortgage.

44.   As Plaintiff detailed in his hardship affidavit sent to OneWest, Plaintiff's difficulty with his mortgage payments was precipitated by Plaintiff's economic and personal hardships, which included his business income falling by nearly 25% and a family illness.  Plaintiff's mortgage payments were more than half of his monthly income.

00052264

BLOOD HURST & O'REARDON, LLP

45.     In July 2009, Plaintiff contacted the loss mitigation department at OneWest and made a request for a loan modification under HAMP.   Mr. Birnbaum was told they could not help him with a loan modification because he was current in his mortgage payments.   However, the representative told Mr. Birnbaum that OneWest could assist him if he were to fall behind and miss his mortgage payments for two months and then he could apply for and receive a loan modification from OneWest.   Relying on the advice given to him by the customer representative and while continuing to experience financial difficulty, Plaintiff missed his mortgage payments.

46.     In August 2009, pursuant to OneWest's request, Plaintiff also sent OneWest the detailed financial disclosures necessary to determine if he qualified for a loan modification under HAMP.   When OneWest claimed they could not read the documents, Plaintiff resent the documents to OneWest.   These detailed disclosures which Plaintiff sent several times to OneWest, included a list of Plaintiff's monthly living expenses, as well as Plaintiff's income, profits and losses for the requisite period of months.   Plaintiff met the underwriting requirements to receive a TPP Contract.

47.     On or about October 8, 2009, OneWest sent Plaintiff the TPP Contract.   Pursuant to the TPP Contract, Plaintiff had to provide OneWest with his first trial period payment and the executed TPP Contract no later than November 1, 2009.   Plaintiff timely complied with each of the requirements in OneWest's TPP Contract offer.

48.     On October 23, 2009, Plaintiff executed and returned two copies of the TPP Contract to OneWest, as well as the HAMP Hardship Affidavit.   *See* Ex. A (Plaintiff's TPP Contract).   Plaintiff also drafted and sent OneWest a financial hardship affidavit stating that he did not have sufficient assets to make his monthly mortgage payments under the then existing mortgage contract.   Plaintiff also sent OneWest copies of his paystubs from the three most recent months.

BLOOD HURST & O'REARDON, LLP

Plaintiff certified, represented and agreed to each of the specific terms and conditions that OneWest specified in its TPP Contract offer.   Accordingly, Plaintiff certified, represented, and agreed:

(a)   I am unable to afford my mortgage payments for the reasons indicated in my Hardship Affidavit and as a result, (i) I am either in default of believe I will be in default under the Loan Documents in the near future, and (ii) I do not have access to sufficient liquid assets to make my monthly mortgage payments now or in the near future;

(b)   I live in the Property as my principal residence, and the Property has not been condemned;

(c)   There has been no change in the ownership of the Property since I signed the Loan Documents;

(d)   I am providing or already have provided documentation for **all** income that I receive (except that I understand that I am not required to disclose any child support or alimony that I receive, unless I wish to have such income considered to qualify for the Offer);

(e)   Under penalty of perjury, all documents and information that I have provided to Lender pursuant to this Plan, including the documents and information regarding my eligibility for the program, are true and correct; and

(f)   If Lender requires me to obtain credit counseling, I will do so. Ex. A (TPP Contract) at §1 (emphasis in original).

49.   Plaintiff met all of the requirements and conditions of the TPP Contract, including the underwriting requirements for a loan modification.

50.   According to OneWest's TPP Contract offer to Plaintiff, the "Effective Date" was 11/01/2009.   *See id.*   The terms "Mortgage," "Note," "Property" were each defined in the TPP Contract as referring to "Loan Number: 1007223454" which OneWest (defined as the "Lender") made on Plaintiff's Property located at 5124 Rue Vendome, Lutz, Florida.   *Id.*   OneWest's TPP

00052264

BLOOD HURST & O'REARDON, LLP

Contract offer also stated that "I" referred to the borrower who executed the TPP Contract offer – Plaintiff Lee M. Birnbaum. *Id.* at n.2. As used in the TPP Contract, the term "Plan" refers to the TPP Contract offer, and not any other mortgage contract, loan or modification. As used in the TPP Contract, the term "Offer" referred to OneWest's TPP Contract offer.

51.    Pursuant to the TPP Contract, Plaintiff agreed to make timely monthly Trial Period Payments to OneWest as follows:

| Trial Period Payment # | Trial Period Payment | Due Date On or Before |
|---|---|---|
| 1 | $4,327.73 | 11/01/2009 |
| 2 | $4,327.73 | 12/01/2009 |
| 3 | $4,327.73 | 01/01/2010 |

Plaintiff made each of the Trial Period Payments in a timely manner in reliance on OneWest's promises in the TPP Contract. In fact, in reliance on OneWest's promises Plaintiff continued making timely, monthly mortgage payments of $4,327.73 for another five months after the three month trial period as required by OneWest's TPP Contract.

52.    OneWest accepted these trial payments sent by Plaintiff without qualification or protest of any kind.

53.    Plaintiff fully complied with all of the other terms and requirements of the TPP Contract, including timely submitting all necessary paperwork.

54.    OneWest accepted Plaintiff's TPP Contract. *See, e.g.*, Exhibit B (July 22, 2010 letter from OneWest to Plaintiff stating "You recently entered into a Home Affordable Modification Program (HAMP) trial plan agreement with OneWest Mortgage Services.").

55.    Despite his compliance in all respects with the terms of the TPP Contract, OneWest failed to extend Plaintiff an offer for permanent modification, in direct contravention of the first sentence of the TPP Contract which states as follows:    "If I am in compliance with this Loan Trial Period and my

00052264

BLOOD HURST & O'REARDON, LLP

representations in Section 1 continue to be true in all material respects, then the Lender will provide me with a Loan Modification Agreement, as set forth in Section 3 [below], that would amend and supplement (1) the Mortgage on the Property, and (2) the Note secured by the Mortgage." *See* Ex. A. (TPP Contract) at p.1; *see also id.* at §3.

56.    On April 12, 2010, OneWest sent a letter to Plaintiff stating as follows:  "we cannot complete our review because the information you submitted is incomplete for the following reason(s):  The paystubs you recently submitted were not legible.  Please send legible copies of your two most recent paystubs." A true and correct copy of OneWest's April 12, 2010, letter is attached as Exhibit C.

57.    Upon receiving OneWest's April 12, 2010 letter stating his paystubs were illegible, Mr. Birnbaum timely resubmitted his most recent paystubs to OneWest.

58.    After resubmitting his most recent paystubs to OneWest in April 2010, Mr. Birnbaum received a letter from OneWest dated July 22, 2010 denying him a permanent mortgage modification.  The letter stated, "[w]e are unable to offer you a Home Affordable Modification because you did not provide us with the documents requested.  A notice which listed the specific documents we needed and the time frame required to provide them was sent to you more than 30 days ago."  A true and correct copy of OneWest's July 22, 2010, letter is attached as Exhibit B.

59.    OneWest's purported reason for the denial of the modification was false, and OneWest's denial of Plaintiff's request for modification breached the terms of the TPP Contract.  Shortly before and again during the loan trial period, Plaintiff submitted all required documentation, including repeatedly submitting and resubmitting his paystubs over the course of his trial period.

BLOOD HURST & O'REARDON, LLP

60.   OneWest has breached its contract with Plaintiff by failing to comply with the TPP Contract and instead denying the permanent modification under the false pretense that Plaintiff failed to submit the required documentation.

61.   OneWest's failure and refusal to perform its obligations under the TPP Contract has damaged Plaintiff, including in the following manners: Plaintiff has lost equity in his home, Plaintiff has suffered accrued interest and principal and other costs improperly applied to his account, Plaintiff has incurred costs and expenses in connection with preparing and presenting documents and materials and information to OneWest, Plaintiff did not seek all other modification programs or alternatives to modification such as refinancing or selling, Plaintiff cannot refinance, Plaintiff had improved the property, but will be unable to enjoy the improvements, Plaintiff suffered a lowered credit score, the value of Plaintiff's home has been lowered, Plaintiff had to suffer the foreclosure proceedings, Plaintiff has and continues to suffer severe emotional distress and health issues by virtue of the potential loss of his home, OneWest has required Plaintiff to make payments that Plaintiff would not have otherwise been obligated to make, Plaintiff has incurred administrative and legal expenses in attempting to rectify the situation created by OneWest, Plaintiff has incurred costs and attorney's fees in seeking legal counsel relative to his rights and remedies as to OneWest's acts, Plaintiff has incurred costs of investigation by virtue of OneWest's failure and refusal to provide him with timely information in response to requests for same regarding the status of his home, Plaintiff has become personally ill by virtue of the acts of OneWest, which threaten his housing and welfare, and Plaintiff has suffered emotional distress and physical illness by virtue of the effects of OneWest's acts upon Plaintiff's wife and minor children, as well as suffering other damages and injuries.

BLOOD HURST & O'REARDON, LLP

00052264

62.     Plaintiff has incurred and continues to incur costs and attorney fees as a result of the acts and omissions of OneWest and by virtue of the instant action.

63.     Plaintiff does not seek to recover damages for emotional distress or physical injuries that OneWest has inflicted upon the Class as a result of its conduct alleged here.

## CLASS ALLEGATIONS

64.     Plaintiff repeats and re-alleges every allegation above as if set forth herein in full.

65.     This class action is brought by the Plaintiff on behalf of a class defined as follows:

> All homeowners who have entered into a TPP Contract with
> OneWest, and, despite having complied with all terms of the TPP
> Contract, have not received from OneWest an offer for permanent
> loan modification.

66.     The Class is comprised of many thousands of individuals whose identities can be readily determined from OneWest's books and records.  The Class is so numerous that joinder of all Class members is impracticable.

67.     There are questions of law and fact common to the Class which predominate over any questions affecting only individual Class members.  These questions, which arise from OneWest's common course of conduct, including the statements made in the TPP Contracts, predominate over any questions affecting only individual Class members.  Among these common questions of law and fact are:

(a)     Whether OneWest's TPP Contracts required OneWest to extend offers of permanent loan modifications when its borrowers complied with their requirements under the TPP Contracts;

CLASS ACTION COMPLAINT

BLOOD HURST & O'REARDON, LLP

00052264

(b)     Whether OneWest breached an express term of its TPP Contracts with Plaintiff and the Class members by failing to extend offers for permanent modification to Plaintiff and the Class members;

(c)     Whether OneWest breached an implied term of its TPP Contracts by failing to extend offers for permanent modification to Plaintiff and the Class members;

(d)     Whether OneWest breached an implied covenant of good faith and fair dealing by (1) repeatedly requesting its borrowers produce documentation already in OneWest's possession and by taking other steps to intentionally delay the extension of offers for permanent modification, and (2) reassuring borrowers that it had received all necessary documentation when its intention was to deny loan modification on the ground that the borrowers had failed to submit all necessary documentation;

(e)     Whether Plaintiff and the Class members reasonably relied on the material representations made by OneWest relating to the offer of a permanent loan modification, and whether Plaintiff and the Class members suffered damage as a result of their reasonable reliance;

(f)     Whether OneWest's alleged conduct violates public policy;

(g)     Whether the alleged conduct constitutes violations of the laws asserted herein;

(h)     Whether the Court can order damages, and the amount of such damages;

(i)     Whether the Plaintiff and Class members are entitled to restitution, and the amount of such restitution; and

(j)     Whether the Plaintiff and Class members are entitled to injunctive relief.

68.     The claims asserted by Plaintiff are typical of the claims of Class members.

CLASS ACTION COMPLAINT

00052264

69.   Plaintiff will fairly and adequately represent and protect the interests of the Class.  Plaintiff does not have any interests antagonistic to those of the Class.  Furthermore, Plaintiff has retained counsel competent and experienced in the prosecution of this type of litigation

70.   This class action is superior to other available methods for the fair and efficient adjudication of this controversy.  The expense and burden of individual litigation would make it impracticable or impossible for Class members to prosecute their claims individually.  Moreover, the trial and the litigation of the claims are manageable.

71.   Absent a class action, OneWest's violations of law will continue and OneWest will continue to reap and retain substantial proceeds as a result of its improper conduct.

72.   Defendant has acted or refused to act on grounds that apply generally to the Class such that final injunctive relief or corresponding declaratory relief is appropriate with respect to the Class as a whole.

## FIRST CAUSE OF ACTION

### (Breach of Contract)

73.   Plaintiff repeats and re-alleges every allegation contained above as if forth herein in full.

74.   Plaintiff brings this claim on his own behalf and on behalf of each member of the Class described above.

75.   The TPP Contract described above constitutes a valid contract. Plaintiff and each Class member formed a contract with OneWest.  The terms of that contract includes the promises and affirmations of fact made by OneWest in its TPP Contract as described above.

76.   The TPP Contract provided that "TIME IS OF THE ESSENCE under this Plan." *See* Ex. A at §2.A

BLOOD HURST & O'REARDON, LLP

00052264

77.   The TPP Contract also provided that if the Plaintiff and the members of the Class made their Trial Period Payments and otherwise complied with the terms of their TPP Contract, then "the Lender will send me a Modification Agreement for my signature which will modify my Loan Documents as necessary or reflect this new payment amount and waive any unpaid late charges accrued to date." *See* Ex. A at §3 and at p.1.

78.   Plaintiff and the members of the Class made their Trial Period Payments and otherwise complied with the TPP Contracts by making their required payments, keeping all information and representations true and accurate in all material respects, and by taking all such other steps necessary under the form TPP Contracts.

79.   Rather than treat the timing of its performance under the TPP Contracts as being "OF THE ESSENCE," OneWest intentionally and systematically delayed fulfilling its promises in the TPP Contracts to provide Plaintiff and Class members permanent mortgage modifications offers by repeatedly requesting documents already in its possession, failing to implement adequate procedures and systems to respond to inquiries and complaints, and by otherwise dragging out and delaying its extension of offers for permanent loan modification.

80.   Rather than extend offers for permanent loan modifications to Plaintiff and Class members, OneWest, without justification, decided to treat the TPP Contracts as if they were null and void.  In so doing, OneWest also falsely claimed it lacked documentation that was in its possession, and that documentation was unreadable among other false pretenses.

81.   Insofar as OneWest did not breach an express term of the TPP Contract, OneWest breached an implied term that required OneWest to extend the offers for permanent mortgage modification within a reasonable period of time following Plaintiff's and the Class members' performance under the TPP

BLOOD HURST & O'REARDON, LLP

Contracts.  Rather than do so, OneWest intentionally and systematically delayed providing permanent modification offers by repeatedly requesting documents already in its possession, failing to implement adequate procedures and systems to respond to inquiries and complaints, and by otherwise prolonging and delaying its extension of offers for permanent loan modification, and ultimately, without justification, treating the TPP Contracts as if they did not exist.

82.    As an actual proximate result of OneWest's breaches of these contractual terms, Plaintiff and the Class members have suffered harm and are threatened with additional harm from Well's breach.  Despite complying with all terms of the TPP Contracts, Plaintiff and the Class members have been denied offers for permanent loan modifications, to which they were entitled under the TPP Contracts.

83.    Further, by entering into the TPP Contracts and making their payments during the trial period, Plaintiff and other Class members forewent pursuing other remedies that they might otherwise have pursued to save their properties, such as restructuring their debt under the bankruptcy code, or pursuing other strategies to deal with their default, such as selling their properties.

84.    On information and belief, some Class members have suffered additional harm and expense in the form of defending against foreclosure activity against their properties when, in reality, they should have been several months into their modified payment plans.

85.    As a result of OneWest's breaches of its TPP Contracts, Plaintiff and the other members of the Class have been damaged in the amount to be determined at trial.

BLOOD HURST & O'REARDON, LLP

**SECOND CAUSE OF ACTION**

**(Breach of the Implied Covenant of Good Faith and Fair Dealing)**

86.  Plaintiff repeats and re-alleges every allegation above as if set forth herein in full.

87.  Plaintiff brings this claim on his own behalf and on behalf of each member of the Class described above.

88.  OneWest is obligated by contract and common law to act in good faith and to deal fairly with each borrower.

89.  The purpose of the covenant of good faith and fair dealing is to guarantee that the parties remain committed to the intended and agreed-upon expectations of the parties in their performance.

90.  The TPP Contract described above constitutes a valid contract. Plaintiff and each Class member formed a contract with OneWest.  The terms of that contract include the promises and affirmations of fact made by OneWest in its TPP Contract as described above.

91.  As discussed above, Plaintiff and Class members fulfilled their obligations under the TPP Contract, including by making the Trial Period Payments, and submitting all required documentation to OneWest.  Pursuant to the TPP Contract, under these circumstances, Plaintiff and Class members have a right to receive a permanent modification offer.

92.  OneWest routinely and regularly breached the duty of good faith and fair dealing, interfering with Plaintiff and Class member's right to receive a permanent modification offer by, among other conduct:

a)  inducing Plaintiff and Class members to stop paying their mortgages in order to qualify for a loan modification;

b)  failing to perform loan servicing functions consistent with its responsibilities to Plaintiff and Class members;

BLOOD HURST & O'REARDON, LLP

00052264

c)  failing to properly supervise its agents and employees including, without limitation, its loss mitigation and collection personnel and its foreclosure personnel;

d)  routinely demanding information already in its files;

e)  inducing Plaintiff and other Class members to engage in a loan modification process in bad faith and with no intention of complying with the TPP Contracts;

f)  failing to provide information to Plaintiff and other Class members regarding the status of their loans;

g)  unreasonably delaying in the modification process for purposes of foreclosing;

h)  repeatedly reassuring Plaintiff and other Class members that all required documentation was in order when OneWest intended to deny the modification on the ground that not all required documentation had been submitted; and

i)  denying the modification on the false pretense that the required documentation was not submitted.

93.   On information and belief, Defendant engaged in the conduct as alleged in the paragraph above in a deliberate attempt to discourage borrowers from successfully completing the TPP Contract's requirements and to minimize the total number of permanent loan modification offers ultimately extended.

94.   As a result of these acts by OneWest, Plaintiff and the other members of the Class have not received offers of permanent mortgage modifications, and have been damaged in an amount to be determined at trial.

**THIRD CAUSE OF ACTION**

**(Promissory Estoppel)**

95.   Plaintiff repeats and re-alleges every allegation above as if set forth herein in full.

BLOOD HURST & O'REARDON, LLP

96.   Plaintiff brings this claim on his own behalf and on behalf of each member of the Class described above.

97.   OneWest declared Plaintiff and Class members eligible for the TPP Contract.  By way of its TPP Contracts, represented and promised to Plaintiff and the members of the Class that if they executed and returned the TPP Contract to OneWest along with supporting documentation, and made the Trial Period Payments, they would receive an offer for permanent loan modification.  *See* Ex. A (TPP Contract) at p.1 and §3.   In fact, OneWest told Plaintiff and Class Members that "TIME IS OF THE ESSENCE under this Plan."  *See id.* at §2.A.

98.   OneWest's TPP Contracts were intended to induce Plaintiff and the Class members to rely on them and in so relying to make monthly Trial Period Payments, submit detailed financial documentation, make statements under penalty of perjury, agree to credit counseling, and establish escrow accounts.

99.   Plaintiff and the Class members did indeed rely on OneWest's representations by submitting Trial Period Payments, agreeing to all required terms and conditions, and submitting detailed financial documentation.

100.  Given the language in the TPP Contracts, Plaintiff's and Class members' reliance was reasonable.  That is, according to the TPP Contract, which, according to OneWest, Plaintiff and Class members all qualified for, so long as Plaintiff and Class members made their Trial Period Payments, submitted required documentation, and continued to be eligible, OneWest "will" offer them a permanent loan modification offer to sign.  *See* Ex. A (TPP Contract) at p.1 and §3.

101.  Plaintiff's and Class members' reliance was to their detriment. Plaintiff and Class members never received offers for permanent loan modifications, lost the opportunities to find alternative strategies to modify their loans and help save their homes, suffered negative credit consequences, and

BLOOD HURST & O'REARDON, LLP

incurred additional interest, costs, and fees as a result of their detrimental reliance on OneWest's representations.

## FOURTH CAUSE OF ACTION

**(Violations of Business and Professions Code Section 17200, *et seq.*)**

102.   Plaintiff repeats and re-alleges every allegation above as if set forth herein in full.

103.   Plaintiff brings this claim on his own behalf and on behalf of each member of the Class described above.

104.   The conduct of OneWest alleged herein constitutes unlawful, unfair or fraudulent business practices in violation of California Business and Professions Code §17200.

105.   Defendant has committed the following acts of unfair competition, as defined by California Business and Professions Code §17200:

a)   inducing Plaintiff and Class members to stop paying their mortgages in order to qualify for a loan modification;

b)   inducing Plaintiff and the other Class members to engage in a loan modification process in bad faith and with no intention of complying with the TPP Contract;

c)   foreclosing on Plaintiff's and the other Class members' homes when OneWest lacked valid reasons to do so;

d)   failing to provide information to Plaintiff and the other Class members regarding the status of their loans;

e)   routinely demanding information already in OneWest's files;

f)   unreasonably delaying the modification process for purposes of foreclosing;

g)   repeatedly reassuring Plaintiff and the other Class members that all required documentation was in order when OneWest

BLOOD HURST & O'REARDON, LLP

intended to deny the modification or the ground that not all required documentation had been submitted;

h)   refusing to provide permanent modification offers on the false pretense that the required documentation was not readable;

i)   refusing to provide permanent modification offers on the false pretense that the required documentation was not submitted; and

j)   refusing to provide permanent modification offers on the false pretense that the borrower did not meet income eligibility requirements.

106.   California Business and Professions Code §17200 prohibits any "unlawful . . . business act or practice."   OneWest has violated §17200's prohibition against engaging in unlawful acts and practices by, *inter alia*, making the representations and omissions of material facts, as set forth more fully herein, and violating California Civil Code §§1572, 1573, 1709, 1710, and 1711, the Rosenthal Fair Debt Collection Practices Act, Civil Code § 1788 *et seq.*, and the common law, including breach of contract as alleged.

107.   Plaintiff and the Class reserve the right to allege other violations of law, which constitute other unlawful business acts or practices.   Such conduct is ongoing and continues to this date.

108.   California Business and Professions Code §17200 also prohibits any "unfair . . . business act or practice."

109.   OneWest's acts, omissions, misrepresentations, practices, and non-disclosures as alleged herein also constitute "unfair" business acts and practices within the meaning of California Business and Professions Code §17200 *et seq.* in that its conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive and unscrupulous as the gravity of the conduct outweighs any alleged benefits attributable to such conduct.

BLOOD HURST & O'REARDON, LLP

110.   There were reasonably available alternatives to further defendants' legitimate business interests, other than the conduct described herein.

111.   California Business and Professions Code §17200 also prohibits any "fraudulent business act or practice."

112.   OneWest's claims, nondisclosures and misleading statements, as more fully set forth above, were false, misleading and/or likely to deceive the consuming public within the meaning of California Business and Professions Code §17200.

113.   OneWest's conduct caused and continues to cause substantial injury to Plaintiff and the other Class members.  Plaintiff and Class members have suffered injury in fact and have lost money as a result of OneWest's unfair conduct.

114.   OneWest has thus engaged in unlawful, unfair, and fraudulent business acts and practices and false advertising, entitling plaintiff to judgment and equitable relief against defendants, as set forth in the Prayer for Relief.

115.   Additionally, pursuant to California Business and Professions Code §17203, Plaintiff seek an order requiring OneWest to immediately cease such acts of unlawful, unfair and fraudulent business practices.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff respectfully requests the following relief:

A.     Certifying the Class as requested herein;

B.     Awarding Plaintiff and Class members damages;

C.     Awarding Plaintiff and Class members restitution;

D.     Awarding declaratory and injunctive relief as permitted by law or equity, including enjoining OneWest from continuing the unlawful practices as set forth herein, and directing OneWest to identify, with Court supervision, victims of its conduct and pay them restitution and disgorgement of all monies

BLOOD HURST & O'REARDON, LLP

CLASS ACTION COMPLAINT

00052264

1  acquired by OneWest by means of any act or practice declared by this Court to

2  be wrongful;

3      E.    Imposing a constructive trust on defendants on all monies

4  wrongfully obtained by OneWest, and ordering the monies to be returned to

5  Plaintiff and the Class;

6      F.    Ordering specific performance of OneWest's contractual obligations

7  together with other relief required by contract and law;

8      G.    Awarding attorneys' fees and costs pursuant to applicable law and

9  doctrines;

10      H.    Awarding pre-judgment and post-judgment interest; and

11      I.    Providing such further relief as may be just and proper.

**DEMAND FOR JURY TRIAL**

13  Plaintiff demands a trial by jury on all causes of action so triable.

14  Dated: November 15, 2012    BLOOD HURST & O'REARDON, LLP
    TIMOTHY G. BLOOD (149343)
15      THOMAS J. O'REARDON II (247952)

By: *Timothy Blood / R*
    TIMOTHY G. BLOOD

701 B Street, Suite 1700
San Diego, CA 92101
Tel: 619-338-1100
Fax: 619-338-1101
tblood@bholaw.com
toreardon@bholaw.com

BALKAN & PATTERSON, LLP
JOHN PATTERSON
601 S. Federal Highway, Suite 302
Boca Raton, FL 33432
Tel: 561-750-9191
Fax: 561/750-1574
john@balkanpatterson.com

*Attorneys for Plaintiff*

00052264

# EXHIBIT A

Investor Loan # : 122833827

# HOME AFFORDABLE MODIFICATION TRIAL PERIOD PLAN
## (Step One of Two-Step Documentation Process)

Trial Period Plan Effective Date: 11/1/2009
Borrower ("I")[1]: Lee M Birnbaum
Lender or Servicer ("Lender"): IndyMac Mortgage Services, a division of OneWest Bank, FSB
Date of first lien mortgage, deed of trust, or security deed ("Mortgage") and Note ("Note"): 2/27/2006
Loan Number: 1007223454
Property Address ("Property"): 5124 Rue Vendome, Lutz, FL 33558

If I am in compliance with this Trial Period Plan (the "Plan") and my representations in Section 1 continue to be true in all material respects, then the Lender will provide me with a Home Affordable Modification Agreement ("Modification Agreement"), as set forth in Section 3, that would amend and supplement (1) the Mortgage on the Property, and (2) the Note secured by the Mortgage. The Mortgage and Note together, as they may previously have been amended, are referred to as the "Loan Documents." Capitalized terms used in this Plan and not defined have the meaning given to them in the Loan Documents.

If I have not already done so, I am providing confirmation of the reasons I cannot afford my mortgage payment and documents to permit verification of all of my income (except that I understand that I am not required to disclose any child support or alimony unless I wish to have such income considered) to determine whether I qualify for the offer described in this Plan (the "Offer"). I understand that after I sign and return two copies of this Plan to the Lender, the Lender will send me a signed copy of this Plan if I qualify for the Offer or will send me written notice that I do not qualify for the Offer. This Plan will not take effect unless and until both the Lender and I sign it and Lender provides me with a copy of this Plan with the Lender's signature.

1.  **My Representations**.  I certify, represent to Lender and agree:

    A.   I am unable to afford my mortgage payments for the reasons indicated in my Hardship Affidavit and as a result, (i) I am either in default or believe I will be in default under the Loan Documents in the near future, and (ii) I do not have sufficient income or access to sufficient liquid assets to make the monthly mortgage payments now or in the near future;

    B.   I live in the Property as my principal residence, and the Property has not been condemned;

    C.   There has been no change in the ownership of the Property since I signed the Loan Documents;

    D.   I am providing or already have provided documentation for **all** income that I receive (and I understand that I am not required to disclose any child support or alimony that I receive, unless I wish to have such income considered to qualify for the Offer);

    E.   Under penalty of perjury, all documents and information I have provided to Lender pursuant to this Plan, including the documents and information regarding my eligibility for the program, are true and correct; and

    F.   If Lender requires me to obtain credit counseling, I will do so.

---

[1] If there is more than one Borrower or Mortgagor executing this document, each is referred to as "I". For purposes of this document words signifying the singular (such as "I") shall include the plural (such as "we") and vice versa where appropriate.

2.     **The Trial Period Plan.** On or before each of the following due dates, I will pay the Lender the amount set forth below ("Trial Period Payment"), which includes payment for Escrow Items, including real estate taxes, insurance premiums and other fees, if any, of U.S. $1,736.63.

| Trial Period Payment # | Trial Period Payment | Due Date On or Before |
|---|---|---|
| 1 * | $4,327.73 | 11/1/2009* |
| 2 | $4,327.73 | 12/1/2009 |
| 3 | $4,327.73 | 1/1/2010 |

The Trial Period Payment is an estimate of the payment that will be required under the modified loan terms, which may be finalized in accordance with Section 3 below. The actual payments under the modified loan terms, however, may be different.

**\*I understand that my first payment and this signed Trial Period Plan must be received by the Lender no later than 11/1/2009 or I may not be accepted into the Home Affordable Modification Program.**

I agree that during the period (the "Trial Period") commencing on the Trial Period Effective Date and ending on the earlier of: (i) the first day of the month following the month in which the last Trial Period Payment is due (the "Modification Effective Date") or (ii) termination of this Plan, I understand and acknowledge that:

A.   TIME IS OF THE ESSENCE under this Plan; this means I must make all payments on or before the days that they are due;

B.   Except as set forth in Section 2.C. below, the Lender will suspend any scheduled foreclosure sale, provided I continue to meet the obligations under this Plan, but any pending foreclosure action will not be dismissed and may be immediately resumed from the point at which it was suspended if this Plan terminates, and no new notice of default, notice of intent to accelerate, notice of acceleration, or similar notice will be necessary to continue the foreclosure action. All rights to such notices are hereby waived by me to the extent permitted by applicable law;

C.   If my property is located in Georgia, Hawaii, Missouri, or Virginia and a foreclosure sale is currently scheduled, the foreclosure sale will not be suspended and the lender may foreclose if I have not made each and every Trial Period Payment that is due through the end of the month preceding the month in which the foreclosure sale is scheduled to occur.  If a foreclosure sale occurs pursuant to this Section 2.C., this plan shall be deemed terminated;

D.   The Lender will hold the payments received during the Trial Period in a non-interest bearing account until they total an amount that is enough to pay my oldest delinquent monthly payment on my loan in full. I understand the Lender will not pay me the interest on the amounts held in the account. If there is any remaining money after such payment is applied, such remaining funds will be held by the Lender and not posted to my account until they total an amount that is enough to pay the next oldest delinquent monthly payment in full;

E.   When the Lender accepts and posts a payment during the Trial Period it will be without prejudice to, and will not be deemed a waiver of, the acceleration of the loan or foreclosure action and related activities and shall not constitute a cure of my default under the Loan Documents unless such payments are sufficient to completely cure my entire default under the Loan Documents;

F.   If prior to the Modification Effective Date, (i) the Lender does not provide me a fully executed copy of this Plan and the Modification Agreement; (ii) I have not made the Trial Period payments required under Section 2 of this Plan; (iii) the Lender determines that any of my representations in Section 1 were not true and correct as of the date I signed this Plan or are no longer true and correct at any time during the Trial Period; or (iv) I do not provide all information and documentation required by Lender, the Loan Documents will not be modified and this Plan will terminate. In this event, the Lender will have all of the rights and remedies provided by the Loan Documents, and any payment I make under this Plan shall be applied to amounts I owe under the Loan Documents and shall not be refunded to me; and

G.  I understand that this Plan is not a modification of the Loan Documents and that the Loan Documents will not be modified unless and until (i) I meet all of the conditions required for modification, (ii) I receive a fully executed copy of a Modification Agreement, and (iii) the Modification Effective Date has passed. I further understand and agree that the Lender will not be obligated or bound to make any modification of the Loan Documents if the Lender determines that I do not qualify or if I fail to meet any one of the requirements under this Plan. If, under the Lender's procedures, a title endorsement(s) and/or subordination agreement(s) are required to ensure that the modified Loan Documents retain first lien position and are fully enforceable, I understand and agree that the Lender will not be obligated or bound to make any modification of the Loan Documents or execute the Modification Agreement if the Lender has not received an acceptable title endorsement(s) and/or subordination agreement(s) from the other lien holders, as Lender determines necessary.

3.  **The Modification**.  I understand that once Lender is able to determine the final amounts of unpaid interest and any other delinquent amounts (except late charges) to be added to my loan balance and after deducting from my loan balance any remaining money held at the end of the Trial Period under Section 2.D. above, the Lender will determine the new payment amount. If (1) my representations in Section 1 were and continue to be true in all material respects; (2) I comply with the requirements in Section 2; (3) I provide the Lender with all required information and documentation; and (4) the Lender determines that I qualify, the Lender will send me a Modification Agreement for my signature which will modify my Loan Documents as necessary to reflect this new payment amount and waive any unpaid late charges accrued to date. The Modification Agreement will provide that, as of the Modification Effective Date, a buyer or transferee of the Property will not be permitted, under any circumstance, to assume the loan unless permitted by applicable State or Federal law, rules or regulations. This Plan shall terminate the day before the Modification Effective Date and the Loan Documents, as modified by a fully executed Modification Agreement, shall govern the terms between the Lender and me for the remaining term of the loan. Provided I make timely payments during the Trial Period and both the Lender and I execute the Modification Agreement, I understand that my first modified payment will be due on the Modification Effective Date (i.e. on the first day of the month following the month in which the last Trial Period Payment is due).

4.  **Additional Agreements**.  I agree to the following:

A.  That all persons who signed the Loan Documents or their authorized representative(s) have signed this Plan, unless (i) a borrower or co-borrower is deceased; (ii) the borrower and co-borrower are divorced and the property has been transferred to one spouse in the divorce decree, the spouse who no longer has an interest in the property need not sign this Plan (although the non-signing spouse may continue to be held liable for the obligation under the Loan Documents); or (iii) or the Lender has waived this requirement in writing.

B.  To comply, except to the extent that they are modified by this Plan, with all covenants, agreements, and requirements of the Loan Documents, including my agreement to make all payments of taxes, insurance premiums, assessments, Escrow Items, impounds, and all other payments, the amount of which may change periodically over the term of my loan.

C.  If Lender may establish an escrow account under applicable law, this Plan constitutes notice that the Lender's waiver as to payment of Escrow Items, if any, has been revoked, and I have been advised of the amount needed to fund my escrow account and I agree to the establishment of an escrow account. If the Loan Documents do not currently have escrow account provisions that govern, among other things, the collection, posting and payment of Escrow Items to and from the escrow account, the Lender will include provisions in my Modification Agreement that are similar to the escrow account provisions in the Fannie Mae/Freddie Mac Uniform Instrument for the state in which I live.

Reference #: 1007223454T3693

D. That all terms and provisions of the Loan Documents remain in full force and effect; nothing in this Plan shall be understood or construed to be a satisfaction or release in whole or in part of the obligations contained in the Loan Documents.

E. That I will execute such other and further documents as may be reasonably necessary to either (i) consummate the terms and conditions of this Plan; or (ii) correct the terms and conditions of this Plan if an error is discovered.

F. That Lender will collect and record personal information, including, but not limited to, my name, address, telephone number, social security number, credit score, income, payment history, government monitoring information, and information about account balances and activity. I understand and consent to the disclosure of my personal information and the terms of this Trial Period Plan and the Modification Agreement by Lender to (a) the U.S. Department of the Treasury, (b) Fannie Mae and Freddie Mac in connection with their responsibilities under the Home Affordability and Stability Plan; (c) any investor, insurer, guarantor or servicer that owns, insures, guarantees or services my first lien or subordinate lien (if applicable) mortgage loan(s); (d) companies that perform support services for the Home Affordable Modification Program and the Second Lien Modification Program; and (e) any HUD certified housing counselor.

G. That, as of the Trial Period Plan Effective Date, I understand that the Lender will only allow the transfer and assumption of this Trial Period Plan to a transferee of my property in the case of my death, divorce or marriage to the same extent as permitted under the Garn St. Germain Act, 12 U.S.C. Section 1701j-3. This Plan may not, under any other circumstances, be assigned to, or assumed by, a buyer or transferee of the Property.

In Witness Whereof, the Lender and I have executed this Plan.

IndyMac Mortgage Services,
a division of OneWest Bank, FSB
Lender                                                        _____(Seal)
                                                              Lee M Birnbaum
                                                              _____
                                                              Date

By: _____                                  _____(Seal)

_____                                      _____
Date                                                         Date

HOME AFFORDABLE MODIFICATION TRIAL PERIOD PLAN – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3156   3/09 (rev. 8/09) (page 4 of 4 pages)

16

Investor Loan # : 122833827

# HOME AFFORDABLE MODIFICATION TRIAL PERIOD PLAN
## (Step One of Two-Step Documentation Process)

Trial Period Plan Effective Date: 11/1/2009
Borrower ("I")[1]: Lee M Birnbaum
Lender or Servicer ("Lender"): IndyMac Mortgage Services, a division of OneWest Bank, FSB
Date of first lien mortgage, deed of trust, or security deed ("Mortgage") and Note ("Note"): 2/27/2006
Loan Number: 1007223454
Property Address ("Property"): 5124 Rue Vendome, Lutz, FL 33558

If I am in compliance with this Trial Period Plan (the "Plan") and my representations in Section 1 continue to be true in all material respects, then the Lender will provide me with a Home Affordable Modification Agreement ("Modification Agreement"), as set forth in Section 3, that would amend and supplement (1) the Mortgage on the Property, and (2) the Note secured by the Mortgage. The Mortgage and Note together, as they may previously have been amended, are referred to as the "Loan Documents." Capitalized terms used in this Plan and not defined have the meaning given to them in the Loan Documents.

If I have not already done so, I am providing confirmation of the reasons I cannot afford my mortgage payment and documents to permit verification of all of my income (except that I understand that I am not required to disclose any child support or alimony unless I wish to have such income considered) to determine whether I qualify for the offer described in this Plan (the "Offer"). I understand that after I sign and return two copies of this Plan to the Lender, the Lender will send me a signed copy of this Plan if I qualify for the Offer or will send me written notice that I do not qualify for the Offer. This Plan will not take effect unless and until both the Lender and I sign it and Lender provides me with a copy of this Plan with the Lender's signature.

1. **My Representations**.  I certify, represent to Lender and agree:

   A.   I am unable to afford my mortgage payments for the reasons indicated in my Hardship Affidavit and as a result, (i) I am either in default or believe I will be in default under the Loan Documents in the near future, and (ii) I do not have sufficient income or access to sufficient liquid assets to make the monthly mortgage payments now or in the near future;

   B.   I live in the Property as my principal residence, and the Property has not been condemned;

   C.   There has been no change in the ownership of the Property since I signed the Loan Documents;

   D.   I am providing or already have provided documentation for **all** income that I receive (and I understand that I am not required to disclose any child support or alimony that I receive, unless I wish to have such income considered to qualify for the Offer);

   E.   Under penalty of perjury, all documents and information I have provided to Lender pursuant to this Plan, including the documents and information regarding my eligibility for the program, are true and correct; and

   F.   If Lender requires me to obtain credit counseling, I will do so.

---

[1] If there is more than one Borrower or Mortgagor executing this document, each is referred to as "I". For purposes of this document words signifying the singular (such as "I") shall include the plural (such as "we") and vice versa where appropriate.



Reference #: 1007223454T3693

2. **The Trial Period Plan.** On or before each of the following due dates, I will pay the Lender the amount set forth below ("Trial Period Payment"), which includes payment for Escrow Items, including real estate taxes, insurance premiums and other fees, if any, of U.S. $1,736.63.

| Trial Period Payment # | Trial Period Payment | Due Date On or Before |
|---|---|---|
| 1* | $4,327.73 | 11/1/2009* |
| 2 | $4,327.73 | 12/1/2009 |
| 3 | $4,327.73 | 1/1/2010 |

The Trial Period Payment is an estimate of the payment that will be required under the modified loan terms, which may be finalized in accordance with Section 3 below. The actual payments under the modified loan terms, however, may be different.

**\*I understand that my first payment and this signed Trial Period Plan must be received by the Lender no later than 11/1/2009 or I may not be accepted into the Home Affordable Modification Program.**

I agree that during the period (the "Trial Period") commencing on the Trial Period Effective Date and ending on the earlier of: (i) the first day of the month following the month in which the last Trial Period Payment is due (the "Modification Effective Date") or (ii) termination of this Plan, I understand and acknowledge that:

A. TIME IS OF THE ESSENCE under this Plan; this means I must make all payments on or before the days that they are due;

B. Except as set forth in Section 2.C. below, the Lender will suspend any scheduled foreclosure sale, provided I continue to meet the obligations under this Plan, but any pending foreclosure action will not be dismissed and may be immediately resumed from the point at which it was suspended if this Plan terminates, and no new notice of default, notice of intent to accelerate, notice of acceleration, or similar notice will be necessary to continue the foreclosure action. All rights to such notices are hereby waived by me to the extent permitted by applicable law;

C. If my property is located in Georgia, Hawaii, Missouri, or Virginia and a foreclosure sale is currently scheduled, the foreclosure sale will not be suspended and the lender may foreclose if I have not made each and every Trial Period Payment that is due through the end of the month preceding the month in which the foreclosure sale is scheduled to occur. If a foreclosure sale occurs pursuant to this Section 2.C., this plan shall be deemed terminated;

D. The Lender will hold the payments received during the Trial Period in a non-interest bearing account until they total an amount that is enough to pay my oldest delinquent monthly payment on my loan in full. I understand the Lender will not pay me the interest on the amounts held in the account. If there is any remaining money after such payment is applied, such remaining funds will be held by the Lender and not posted to my account until they total an amount that is enough to pay the next oldest delinquent monthly payment in full;

E. When the Lender accepts and posts a payment during the Trial Period it will be without prejudice to, and will not be deemed a waiver of, the acceleration of the loan or foreclosure action and related activities and shall not constitute a cure of my default under the Loan Documents unless such payments are sufficient to completely cure my entire default under the Loan Documents;

F. If prior to the Modification Effective Date, (i) the Lender does not provide me a fully executed copy of this Plan and the Modification Agreement; (ii) I have not made the Trial Period payments required under Section 2 of this Plan; (iii) the Lender determines that any of my representations in Section 1 were not true and correct as of the date I signed this Plan or are no longer true and correct at any time during the Trial Period; or (iv) I do not provide all information and documentation required by Lender, the Loan Documents will not be modified and this Plan will terminate. In this event, the Lender will have all of the rights and remedies provided by the Loan Documents, and any payment I make under this Plan shall be applied to amounts I owe under the Loan Documents and shall not be refunded to me; and

G.  I understand that this Plan is not a modification of the Loan Documents and that the Loan Documents will not be modified unless and until (i) I meet all of the conditions required for modification, (ii) I receive a fully executed copy of a Modification Agreement, and (iii) the Modification Effective Date has passed.  I further understand and agree that the Lender will not be obligated or bound to make any modification of the Loan Documents if the Lender determines that I do not qualify or if I fail to meet any one of the requirements under this Plan.  If, under the Lender's procedures, a title endorsement(s) and/or subordination agreement(s) are required to ensure that the modified Loan Documents retain first lien position and are fully enforceable, I understand and agree that the Lender will not be obligated or bound to make any modification of the Loan Documents or execute the Modification Agreement if the Lender has not received an acceptable title endorsement(s) and/or subordination agreement(s) from the other lien holders, as Lender determines necessary.

3.  **The Modification.**  I understand that once Lender is able to determine the final amounts of unpaid interest and any other delinquent amounts (except late charges) to be added to my loan balance and after deducting from my loan balance any remaining money held at the end of the Trial Period under Section 2.D. above, the Lender will determine the new payment amount.  If (1) my representations in Section 1 were and continue to be true in all material respects; (2) I comply with the requirements in Section 2; (3) I provide the Lender with all required information and documentation; and (4) the Lender determines that I qualify, the Lender will send me a Modification Agreement for my signature which will modify my Loan Documents as necessary to reflect this new payment amount and waive any unpaid late charges accrued to date. The Modification Agreement will provide that, as of the Modification Effective Date, a buyer or transferee of the Property will not be permitted, under any circumstance, to assume the loan unless permitted by applicable State or Federal law, rules or regulations. This Plan shall terminate the day before the Modification Effective Date and the Loan Documents, as modified by a fully executed Modification Agreement, shall govern the terms between the Lender and me for the remaining term of the loan. Provided I make timely payments during the Trial Period and both the Lender and I execute the Modification Agreement, I understand that my first modified payment will be due on the Modification Effective Date (i.e. on the first day of the month following the month in which the last Trial Period Payment is due).

4.  **Additional Agreements.**  I agree to the following:

A.  That all persons who signed the Loan Documents or their authorized representative(s) have signed this Plan, unless (i) a borrower or co-borrower is deceased; (ii) the borrower and co-borrower are divorced and the property has been transferred to one spouse in the divorce decree, the spouse who no longer has an interest in the property need not sign this Plan (although the non-signing spouse may continue to be held liable for the obligation under the Loan Documents); or (iii) or the Lender has waived this requirement in writing.

B.  To comply, except to the extent that they are modified by this Plan, with all covenants, agreements, and requirements of the Loan Documents, including my agreement to make all payments of taxes, insurance premiums, assessments, Escrow Items, impounds, and all other payments, the amount of which may change periodically over the term of my loan.

C.  If Lender may establish an escrow account under applicable law, this Plan constitutes notice that the Lender's waiver as to payment of Escrow Items, if any, has been revoked, I have been advised of the amount needed to fund my escrow account and I agree to the establishment of an escrow account. If the Loan Documents do not currently have escrow account provisions that govern, among other things, the collection, posting and payment of Escrow Items to and from the escrow account, the Lender will include provisions in my Modification Agreement that are similar to the escrow account provisions in the Fannie Mae/Freddie Mac Uniform Instrument for the state in which I live.

D.  That all terms and provisions of the Loan Documents remain in full force and effect; nothing in this Plan shall be understood or construed to be a satisfaction or release in whole or in part of the obligations contained in the Loan Documents.

E.  That I will execute such other and further documents as may be reasonably necessary to either (i) consummate the terms and conditions of this Plan; or (ii) correct the terms and conditions of this Plan if an error is discovered.

F.  That Lender will collect and record personal information, including, but not limited to, my name, address, telephone number, social security number, credit score, income, payment history, government monitoring information, and information about account balances and activity. I understand and consent to the disclosure of my personal information and the terms of this Trial Period Plan and the Modification Agreement by Lender to (a) the U.S. Department of the Treasury, (b) Fannie Mae and Freddie Mac in connection with their responsibilities under the Home Affordability and Stability Plan; (c) any investor, insurer, guarantor or servicer that owns, insures, guarantees or services my first lien or subordinate lien (if applicable) mortgage loan(s); (d) companies that perform support services for the Home Affordable Modification Program and the Second Lien Modification Program; and (e) any HUD certified housing counselor.

G.  That, as of the Trial Period Plan Effective Date, I understand that the Lender will only allow the transfer and assumption of this Trial Period Plan to a transferee of my property in the case of my death, divorce or marriage to the same extent as permitted under the Garn St. Germain Act, 12 U.S.C. Section 1701j-3.  This Plan may not, under any other circumstances, be assigned to, or assumed by, a buyer or transferee of the Property.

In Witness Whereof, the Lender and I have executed this Plan.

IndyMac Mortgage Services,
a division of OneWest Bank, FSB
Lender

_____ (Seal)
Lee M Birnbaum
10 / 23 / 2009
Date

By: _____

_____ (Seal)

_____
Date

_____
Date

HOME AFFORDABLE MODIFICATION TRIAL PERIOD PLAN – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3156   3/09 (rev. 8/09) (page 4 of 4 pages)

20

## Home Affordable Modification Program Hardship Affidavit

Borrower Name (first, middle, last): Lee M Birnbaum                    Date of Birth:
Co-Borrower Name (first, middle, last):                                Date of Birth:
Property Street Address:   5124 Rue Vendome
Property City, ST, Zip:    Lutz, FL 33558
Servicer:                  IndyMac Mortgage Services, a division of OneWest Bank, FSB
Loan Number:               1007223454

In order to qualify for IndyMac Mortgage Services' ("Servicer") offer to enter into an agreement to modify my loan under the federal government's Home Affordable Modification Program (the "Agreement"), I/we am/are submitting this form to the Servicer and indicating by my/our checkmarks ("✓") the one or more events that contribute to my/our difficulty making payments on my/our mortgage loan.

| Borrower | Co-Borrower | |
|---|---|---|
| Yes No | Yes No | |
| ☑ ☐ | ☐ ☐ | My income has been reduced or lost. For example: unemployment, underemployment, reduced job hours, reduced pay, or a decline in self-employed business earnings. I have provided details below under "Explanation." |
| Yes No | Yes No | |
| ☑ ☐ | ☐ ☐ | My household financial circumstances have changed. For example: death in family, serious or chronic illness, permanent or short-term disability, increased family responsibilities (adoption or birth of a child, taking care of elderly relatives or other family members). I have provided details below under "Explanation." |
| Yes No | Yes No | |
| ☑ ☐ | ☐ ☐ | My expenses have increased. For example: monthly mortgage payment has increased or will increase, high medical and health-care costs, uninsured losses (such as those due to fires or natural disasters), unexpectedly high utility bills, increased real property taxes. I have provided details below under "Explanation." |
| Yes No | Yes No | |
| ☐ ☐ | ☐ ☐ | My cash reserves are insufficient to maintain the payment on my mortgage loan and cover basic living expenses at the same time. Cash reserves include assets such as cash, savings, money market funds, marketable stocks or bonds (excluding retirement accounts). Cash reserves do not include assets that serve as an emergency fund (generally equal to three times my monthly debt payments). I have provided details below under "Explanation." |
| Yes No | Yes No | |
| ☑ ☐ | ☐ ☐ | My monthly debt payments are excessive, and I am overextended with my creditors. I may have used credit cards, home equity loans or other credit to make my monthly mortgage payments. I have provided details below under "Explanation." |
| Yes No | Yes No | |
| ☑ ☐ | ☐ ☐ | There are other reasons I/we cannot make our mortgage payments. I have provided details below under "Explanation." |

## Information for Government Monitoring Purposes

The following information is requested by the federal government in order to monitor compliance with federal statutes that prohibit discrimination in housing. **You are not required to furnish this information, but are encouraged to do so. The law provides that a lender or servicer may not discriminate either on the basis of this information, or on whether you choose to furnish it.** If you furnish the information, please provide both ethnicity and race. For race, you may check more than one designation. If you do not furnish ethnicity, race, or sex, the lender or servicer is required to note the information on the basis of visual observation or surname if you have made this request for a loan modification in person. **If you do not wish to furnish the information, please check the box below.**

| BORROWER ☐ I do not wish to furnish this information | | CO-BORROWER ☐ I do not wish to furnish this information | |
|---|---|---|---|
| Ethnicity: | ☐ Hispanic or Latino<br>☐ Not Hispanic or Latino | Ethnicity: | ☐ Hispanic or Latino<br>☐ Not Hispanic or Latino |
| Race: | ☐ American Indian or Alaska Native<br>☐ Asian<br>☐ Black or African American<br>☐ Native Hawaiian or Other Pacific Islander<br>☐ White | Race: | ☐ American Indian or Alaska Native<br>☐ Asian<br>☐ Black or African American<br>☐ Native Hawaiian or Other Pacific Islander<br>☐ White |
| Sex: | ☐ Female<br>☐ Male | Sex: | ☐ Female<br>☐ Male |

| To be Completed by Interviewer | Interviewer's Name (print or type) | Name/Address of Interviewer's Employer |
|---|---|---|
| ☐ Face-to-face interview | Interviewer's Signature        Date | |
| ☐ Mail | | |
| ☐ Telephone | Interviewer's Phone Number (include area code) | |
| ☐ Internet | | |

## Borrower/Co-Borrower Acknowledgement

1. Under penalty of perjury, I/we certify that all of the information in this affidavit is truthful and the event(s) identified above has/have contributed to my/our need to modify the terms of my/our mortgage loan.
2. I/we understand and acknowledge the Servicer may investigate the accuracy of my/our statements, may require me/us to provide supporting documentation, and that knowingly submitting false information may violate Federal law.
3. I/we understand the Servicer will pull a current credit report on all borrowers obligated on the Note.
4. I/we understand that if I/we have intentionally defaulted on my/our existing mortgage, engaged in fraud or misrepresented any fact(s) in connection with this Hardship Affidavit, or if I/we do not provide all of the required documentation, the Servicer may cancel the Agreement and may pursue foreclosure on my/our home.
5. I/we certify that my/our property is owner-occupied and I/we have not received a condemnation notice.
6. I/we certify that I/we am/are willing to commit to credit counseling if it is determined that my/our financial hardship is related to excessive debt.
7. I/we certify that I/we am/are willing to provide all requested documents and to respond to all Servicer communication in a timely manner. I/we understand that time is of the essence.

22

8. I/we understand that the Servicer will use this information to evaluate my/our eligibility for a loan modification or other workout, but the Servicer is not obligated to offer me/us assistance based solely on the representations in this affidavit.

9. I/we accept and agree to all terms of the Home Affordable Modification Trial Period ("Trial Period") Plan which is incorporated herein by reference as if set forth in full.

10. I/we agree that when the Servicer accepts and posts a payment during the Trial Period it will be without prejudice to, and will not be deemed a waiver of, the acceleration of my loan or foreclosure action and related activities and shall not constitute a cure of my default under my loan unless such payments are sufficient to completely cure my entire default under my loan.

11. I/we agree that any prior waiver as to payment of escrow Items in connection with my loan has been revoked.

12. I/we agree to the establishment of an escrow account and the payment of escrow items if an escrow account never existed on my loan.

13. I/we understand that Servicer will collect and record personal information, including, but not limited to, my name, address, telephone number, social security number, credit score, income, payment history, government monitoring information, and information about account balances and activity. I understand and consent to the disclosure of my personal information and the terms of the Trial Period Plan and Modification Agreement by Servicer to (a) the U.S. Department of the Treasury, (b) Fannie Mae and Freddie Mac in connection with their responsibilities under the Homeowner Affordability and Stability Plan; (c) any investor, insurer, guarantor or servicer that owns, insures, guarantees or services my first lien or subordinate lien (if applicable) mortgage loan(s); (d) companies that perform support services for the Home Affordable Modification Program and the Second Lien Modification Program; and (e) any HUD certified housing counselor.

| | | | |
|---|---|---|---|
| _Leon Lim_ | _10/23/09_ | _____ | _____ |
| Borrower Signature | Date | Co-Borrower Signature | Date |

E-mail Address: _LeeB1023@aol.com_   E-mail Address: _____

Cell Phone # _____   Cell Phone # _____

Home Phone # _813 909-1003_   Home Phone # _____

Work Phone # _813 909-1003_   Work Phone # _____

Social Security # _186 38 6215_   Social Security # ____ ___ _____

Explanation: _See attached (copy) previously sent_

# EXHIBIT B

Please read the detailed information provided below.

IMD0723D   7000001562 01.0005.0144 1562/1



Lee M Birnbaum
5124 Rue Vendome
Lutz, FL 33558-2859

**Loan Number:** 1007223454
**Reference Number:** 1007223454Y5649
**MAT Instance Number:** 1

July 22, 2010

Dear Lee M Birnbaum,

You recently entered into a Home Affordable Modification Program (HAMP) trial plan agreement with IndyMac Mortgage Services. By participating in HAMP, IndyMac Mortgage Services has agreed to follow the rules and guidelines that have been established by the United States Department of the Treasury. While this program is designed to help borrowers who are experiencing a financial hardship, not all borrowers will meet the eligibility requirements established by the Department of the Treasury, and therefore, not all borrowers are eligible for a HAMP loan modification.

**We are unable to offer you a Home Affordable Modification because you did not provide us with the documents requested. A notice which listed the specific documents we needed and the time frame required to provide them was sent to you more than 30 days ago.**

If you have questions regarding any of the information included in this letter, please do not hesitate to call us at 1.888.872.0252. We also strongly encourage you to consult a HUD-approved housing counselor to discuss potential alternatives for reducing expenses not related to your primary mortgage at 1.800.569.4287. If you need assistance understanding this notice, you can call 1.888.995.HOPE and ask for MHA help at no charge.

We regret that we are unable to modify the terms of your loan but are interested in working with you to determine if there are any further alternatives to foreclosure that fit your circumstances. We encourage you to call us at 1.888.280.6194 to discuss possible solutions such as a short sale or deed-in-lieu of foreclosure. A short sale is an alternative to foreclosure that allows homeowners who can no longer afford their mortgage payments to sell their home at a market value that is less than the total amount owed. A deed-in-lieu of foreclosure allows a borrower to settle a loan that is in default by transferring ownership of the mortgaged property to the lender.

Sincerely,

IndyMac Mortgage Services, a division of OneWest Bank®, FSB

Call Toll Fre
Monday - Friday, 8 a.m. - 9 p.m. (ES1
Saturday, 9 a.m. - 6 p.m. (ES1

IndyMac Mortgage Services will continue to service your loan in accordance with the terms of your existing Note. Late mortgage payments will be reported to the credit bureaus, and failure to make payments as currently required will impact your credit rating and may ultimately result in foreclosure action.



**This company is a debt collector and any information obtained will be used for that purpose. However, if you have filed a bankruptcy petition and there is either an "automatic stay" in effect in your bankruptcy case, or your debt has been discharged pursuant to the bankruptcy laws of the United States, this communication is intended solely for informational purposes.**

5649    © 2010 IndyMac Mortgage Services, a division of OneWest Bank, FSB. Registered trade/service marks are the property of OneWest Bank, FSB and/or its subsidiaries.

# EXHIBIT C

# IndyMac Mortgage Services
**a division of OneWest Bank®, FSB**

April 12, 2010

IB40409D   7000000128 01.0002.0116 128/1

|||.||||||.|.|.||||..|.|||.|.||.|..||.|.|.||.||.||.|.|||.||.|.||||.|.|||

Lee M Birnbaum
5124 Rue Vendome
Lutz, FL 33558-2859

Loan Number: 1007223454
Investor Loan Number: 0122833827
Reference Number: 1007223454A4899
Property Address: 5124 Rue Vendome
Lutz, FL  33558

Dear Lee M Birnbaum,

Thank you for your interest in a loan modification through the Home Affordable Modification Program (HAMP). We are currently reviewing your situation to determine your eligibility for this program. Unfortunately, we cannot complete our review because the information you submitted is incomplete for the following reason(s):

- The paystubs that you recently submitted were not legible. Please send legible copies of your two most recent paystubs.

**To avoid further delays in our review process, please submit the above item(s) to us as soon as possible. Item(s) can be faxed to 1.866.435.7643 or mailed to the address below in the enclosed prepaid envelope.**

**IndyMac Mortgage Services
2900 Esperanza Crossing
IndyMac - 4
Austin, TX 78758**

Failure to comply with this request may result in disqualification of eligibility for a loan modification.

Once we have received all of the required documents, we will complete our review of your situation and contact you regarding your eligibility for HAMP.

If you do not qualify for HAMP we will not be able to modify your loan, but may be able to offer you an alternative solution such as a "short sale" or a deed-in-lieu of foreclosure. A "short sale" is an alternative to foreclosure that allows homeowners who can no longer afford their mortgage payments to sell their home at a market value that is less than the total amount owed. A deed-in-lieu of foreclosure is a process that allows a borrower to convey their interest in the mortgaged property to the lender to satisfy a loan that is in default to avoid foreclosure proceedings.

If you have any questions regarding any of the information in this letter, please do not hesitate to call us at 1.888.698.5658.

Sincerely,

Brandon Latman
First Vice President
IndyMac Mortgage Services, a division of OneWest Bank®, FSB

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge S. James Otero and the assigned discovery Magistrate Judge is Andrew J. Wistrich.

The case number on all documents filed with the Court should read as follows:

### CV12- 9810 SJO (AJWx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

===========================================

### NOTICE TO COUNSEL

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| [X] **Western Division**<br>312 N. Spring St., Rm. G-8<br>Los Angeles, CA 90012 | [ ] **Southern Division**<br>411 West Fourth St., Rm. 1-053<br>Santa Ana, CA 92701-4516 | [ ] **Eastern Division**<br>3470 Twelfth St., Rm. 134<br>Riverside, CA 92501 |
|---|---|---|

Failure to file at the proper location will result in your documents being returned to you.

Name & Address:
BLOOD HURST & O'REARDON LLP
Timothy G. Blood (149343)
Thomas J. O'Reardon (247952)
701 B Street, Suite 1700, San Diego, CA  92101
Tel: (619) 338-1100 / Fax:  (619) 338-1101

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| LEE BIRNBAUM, on Behalf of Himself, and all Others Similarly Situated, | CASE NUMBER |
|---|---|
| PLAINTIFF(S) | **CV12·9810** SJO (AJWx) |
| v. | |
| ONEWEST BANK, FSB, | **SUMMONS** |
| DEFENDANT(S). | |

TO:    DEFENDANT(S):

A lawsuit has been filed against you.

Within ___21___ days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☒ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff's attorney, _Timothy G. Blood_____, whose address is _Blood Hurst & O'Reardon, LLP, 701 B Street, Suite 1700, San Diego, CA  92101_.  If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint.  You also must file your answer or motion with the court.

Clerk, U.S. District Court

Dated:   NOV 1 5 2012

By: **SHEA BOURGEO~~...~~**
Deputy Clerk

1184

(Seal of the Court)

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States.  Allowed 60 days by Rule 12(a)(3)].*

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
CIVIL COVER SHEET

**I (a) PLAINTIFFS** (Check box if you are representing yourself ☐)
LEE BIRNBAUM, on Behalf of Himself, and All Others Similarly Situated

**DEFENDANTS**
ONEWEST BANK, FSB

**(b)** Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)

Timothy G. Blood (149343), BLOOD HURST & O'REARDON, LLP
701 B Street, Suite 1700, San Diego, CA 92101
Tel: (619) 338-1100 / Fax: (619) 338-1101

Attorneys (If Known)

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff   ☐ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant   ☑ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☑ 4 |
| Citizen of Another State | ☑ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☑ 1 Original Proceeding   ☐ 2 Removed from State Court   ☐ 3 Remanded from Appellate Court   ☐ 4 Reinstated or Reopened   ☐ 5 Transferred from another district (specify):   ☐ 6 Multi-District Litigation   ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☑ Yes   ☐ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☑ Yes   ☐ No   ☑ MONEY DEMANDED IN COMPLAINT: $ in excess of $5,000,000

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
28 USC Section 1332(d)(2); Violation of Unfair Competition Law, Business & Professions Code Section 17200 et seq

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | ☐ 530 General | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 535 Death Penalty | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 540 Mandamus/ Other | ☐ 740 Railway Labor Act |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | **BANKRUPTCY** | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 480 Consumer Credit | ☐ 151 Medicare Act | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | **FORFEITURE / PENALTY** | **PROPERTY RIGHTS** |
| ☐ 490 Cable/Sat TV | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 355 Motor Vehicle Product Liability | **CIVIL RIGHTS** | ☐ 610 Agriculture | ☐ 820 Copyrights |
| ☐ 810 Selective Service | | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 620 Other Food & Drug | ☐ 830 Patent |
| ☐ 850 Securities/Commodities/ Exchange | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 362 Personal Injury- Med Malpractice | ☐ 442 Employment | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 840 Trademark |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 160 Stockholders' Suits | ☐ 365 Personal Injury- Product Liability | ☐ 443 Housing/Acco- mmodations | | **SOCIAL SECURITY** |
| ☑ 890 Other Statutory Actions | ☐ 190 Other Contract | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | ☐ 630 Liquor Laws | ☐ 861 HIA (1395ff) |
| ☐ 891 Agricultural Act | ☐ 195 Contract Product Liability | | ☐ 445 American with Disabilities - Employment | ☐ 640 R.R. & Truck | ☐ 862 Black Lung (923) |
| ☐ 892 Economic Stabilization Act | ☐ 196 Franchise | **IMMIGRATION** | ☐ 446 American with Disabilities - Other | ☐ 650 Airline Regs | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 893 Environmental Matters | **REAL PROPERTY** | ☐ 462 Naturalization Application | ☐ 440 Other Civil Rights | ☐ 660 Occupational Safety/Health | ☐ 864 SSID Title XVI |
| ☐ 894 Energy Allocation Act | ☐ 210 Land Condemnation | ☐ 463 Habeas Corpus- Alien Detainee | | ☐ 690 Other | ☐ 865 RSI (405(g)) |
| ☐ 895 Freedom of Info. Act | ☐ 220 Foreclosure | ☐ 465 Other Immigration Actions | | | **FEDERAL TAX SUITS** |
| ☐ 900 Appeal of Fee Determi- nation Under Equal Access to Justice | ☐ 230 Rent Lease & Ejectment | | | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| | ☐ 240 Torts to Land | | | | ☐ 871 IRS-Third Party 26 USC 7609 |
| ☐ 950 Constitutionality of State Statutes | ☐ 245 Tort Product Liability | | | | |
| | ☐ 290 All Other Real Property | | | | |

## CV12·9810

**FOR OFFICE USE ONLY:** Case Number: _____

AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
### CIVIL COVER SHEET

**VIII(a).  IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed?  ☑No   ☐ Yes
If yes, list case number(s): _____

**VIII(b).  RELATED CASES:** Have any cases been previously filed in this court that are related to the present case?  ☑No   ☐ Yes
If yes, list case number(s): _____

**Civil cases are deemed related if a previously filed case and the present case:**
(Check all boxes that apply)   ☐ A.  Arise from the same or closely related transactions, happenings, or events; or
　　　　　　　　　　　　　　　☐ B.  Call for determination of the same or substantially related or similar questions of law and fact; or
　　　　　　　　　　　　　　　☐ C.  For other reasons would entail substantial duplication of labor if heard by different judges; or
　　　　　　　　　　　　　　　☐ D.  Involve the same patent, trademark or copyright, _and_ one of the factors identified above in a, b or c also is present.

**IX.  VENUE:**  (When completing the following information, use an additional sheet if necessary.)

(a)   List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named plaintiff resides.
　☐   Check here if the government, its agencies or employees is a named plaintiff.  If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
|  | Florida |

(b)   List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named defendant resides.
　☐   Check here if the government, its agencies or employees is a named defendant.  If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles |  |

(c)   List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** claim arose.
　　**Note: In land condemnation cases, use the location of the tract of land involved.**

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles |  |

**\* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties**
Note: In land condemnation cases, use the location of the tract of land involved

X.  SIGNATURE OF ATTORNEY (OR PRO PER):   _Timothy Blood_   Date   November 15, 2012

**Notice to Counsel/Parties:**   The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law.  This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but  is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet.  (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims filed by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program.  (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended.  (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended.  (42 U.S.C. (g)) |