1  BLOOD HURST & O'REARDON, LLP
   TIMOTHY G. BLOOD (149343)
2  THOMAS J. O'REARDON II (247952)
   701 B Street, Suite 1700
3  San Diego, CA 92101
   Telephone: (619) 338-1100
4  Facsimile: (619) 338-1101
   tblood@bholaw.com
5  toreardon@bholaw.com

6  BALKAN & PATTERSON, LLP
   JOHN PATTERSON (*pro hac vice*)
7  601 S. Federal Highway, Suite 302
   Boca Raton, FL 33432
8  Telephone: 561/750-9191
   561/750-1574 (fax)
9  john@balkanpatterson.com

10 Attorneys for Plaintiff

11                UNITED STATES DISTRICT COURT

12               CENTRAL DISTRICT OF CALIFORNIA

13

| LEE BIRNBAUM, on Behalf of Himself, and All Others Similarly Situated,, | Case No.: 2:12-cv-09810-SJO-AJW |
|---|---|
| Plaintiff, | **PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS** |
| v. | Hearing Date: Feb. 25, 2013<br>Time: 10:00 a.m. |
| ONEWEST BANK, FSB,, | |
| Defendant. | Judge: Hon. S. James Otero<br>Location: Courtroom 1<br>Complaint Filed: Nov. 15, 2012<br>Trial Date: TBD |

14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

BLOOD HURST & O'REARDON, LLP

00054864

# TABLE OF CONTENTS

PAGE(S)

I.   INTRODUCTION ........................................................................................ 1

II.   STATEMENT OF FACTS........................................................................... 2

    A.   OneWest's Participation in HAMP................................................... 2

    B.   OneWest's Breach............................................................................. 3

III.   ARGUMENT ............................................................................................ 4

    A.   A Choice-of-Law Analysis is Premature, Nevertheless, California Law Governs Plaintiffs' Claims Regarding the TPP Contract ................................................................................... 4

        1.   The Mortgage Agreement's Choice-of-Law Provision Does Not Apply Here ................................................. 5

        2.   OneWest Does Not Meet its Burden ...................................... 5

    B.   The Complaint Properly Alleges Breach of the TPP Contract .......... 7

        1.   The TPP Contract Constituted a Valid Offer for a Permanent Loan Modification ................................................ 7

        2.   The TPP Agreement Contains Definite and Certain Terms .................................................................................. 9

        3.   The Complaint Properly Alleges Consideration .................. 10

    C.   Breach of the Covenant of Good Faith and Fair Dealing is Properly Pled.................................................................................. 12

    D.   The Complaint States a Claim for Promissory Estoppel ................. 13

    E.   The Complaint States Claims Under the UCL................................. 14

    F.   The Statute of Frauds Does Not Apply and OneWest Would Be Estopped from Relying on Such a Defense................................ 14

    G.   Plaintiff Properly Alleges Injury.................................................... 16

    H.   OneWest's Alternative Argument that the Court Should Stay this Action under the *Colorado River* Doctrine Pending Plaintiff's Foreclosure Proceeding Fails........................... 17

IV.   CONCLUSION ....................................................................................... 20

BLOOD HURST & O'REARDON, LLP

00054864

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS

# TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**

*Aceves v. U.S. Bank, N.A.*,
192 Cal. App. 4th 218 (2011) .......................................................................... 13

Allen v. Hylands, Inc.,
2012 U.S. Dist. LEXIS 61606 (C.D. Cal. May 2, 2012) ............................ 7, 14

Ansanelli v. JPMorgan Chase Bank, N.A.,
2011 U.S. Dist. LEXIS 32350 (N.D. Cal. Mar. 28, 2011) ............................. 11

Ashcroft v. Iqbal,
556 U.S. 662 (2009) ......................................................................................... 9

Asmus v. Pacific Bell,
23 Cal. 4th 1 (2000) ....................................................................................... 10

Barroso v. Ocwen Loan Servicing, LLC,
208 Cal. App. 4th 1001 (2012) ...................................................................... 15

Belyea v. Litton Loan Serv., LLP,
2011 U.S. Dist. LEXIS 77734 (D. Mass. July 15, 2011) ................... 10, 11, 13

Bosque v. Wells Fargo Bank, N.A.,
762 F. Supp. 2d 342 (D. Mass. 2011)...................................................... passim

Brown v. Pacific Life Ins. Co.,
462 F.3d 384 (5th Cir. 2006) .......................................................................... 18

Bruno v. Eckhart Corp.,
280 F.R.D. 540 (C.D. Cal. 2012) ................................................................. 6, 7

Byrne v. Laura,
52 Cal. App. 4th 1054 (1997) ........................................................................ 15

Carma Developers (Cal.), Inc. v. Marathon Dev. Cal., Inc.,
2 Cal. 4th 342 (1992) ..................................................................................... 12

Cave v. Saxon Mortg. Servs.,
2012 U.S. Dist. LEXIS 75276 (E.D. Pa. May 30, 2012) ...................... 9, 11, 12

Celano v. Dlabal,
591 So. 2d 653 (Fla. 1st DCA 1991) .............................................................. 15

BLOOD HURST & O'REARDON, LLP

ii

Clothesrigger, Inc. v. GTE Corp.,
    191 Cal. App. 3d 605 (1987) ............................................................................. 6

Colorado River Water Conservation Dist. v. United States,
    424 U.S. 800, 96 S. Ct. 1236, 47 L. Ed. 2d 483 (1976) ..................... 17, 18, 19

Court Appointed Receiver of Lancer Offshore, Inc. v. Citco Group LTD,
    2011 WL 1233106 (S.D. Fla. Mar. 30, 2011) ................................................. 12

CX Digital Media v. Smoking Everywhere,
    2011 WL 1102782 (S.D. Fla. Mar. 23 2011) ............................................. 15, 16

Daugherty v. Oppenheimer, Inc.,
    2007 U.S. Dist. LEXIS 51781 (N.D. Cal. July 5, 2007) ........................... 17, 19

De Simas v. Big Lots Stores,
    2007 U.S. Dist. LEXIS 19257 (N.D. Cal. Mar. 2, 2007) ................................. 19

Dixon v. OneWest Bank, N.A.,
    2011 U.S. Dist. LEXIS 80187 (D. Mass. July 22, 2011) ................................. 14

Durmic v. J.P. Morgan Chase Bank, NA,
    2010 U.S. Dist. LEXIS 124603 (D. Mass. Nov. 24, 2010) ........... 10, 11, 12, 14

Faulkner v. Onewest Bank, FSB,
    2010 U.S. Dist. LEXIS 59688 (N.D. W. Va. June 16, 2010) ......................... 15

Fletcher v. OneWest Bank, FSB,
    2012 U.S. Dist. LEXIS 15141 (N.D. IL. Oct. 22, 2012) ........................ 1, 11, 12

Garcia v. World Savings, FSB,
    183 Cal. App. 4th 1031 (2010) ................................................................... 13, 16

Gaudin v. Saxon Mortg. Servs.,
    2011 U.S. Dist. LEXIS 132957 (N.D. Cal. Nov. 17, 2011) ............................ 12

Hanlon v. Chrysler Corp.,
    150 F.3d 1011 (9th Cir. 1998) ...................................................................... 6, 7

Hanson v. Wells Fargo Home Mortgage,
    2010 U.S. Dist. LEXIS 85629 (E.D. Ark. Aug. 10, 2010) .............................. 13

Hemispherx Biopharma, Inc. v. Mid-South Capital, Inc.,
    690 F.3d 1216 (11th Cir. 2012) ...................................................................... 16

BLOOD HURST & O'REARDON, LLP

iii

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS

Holder v. Holder,
  305 F.3d 854 (9th Cir. 2002) .................................................................. 19

House v. Lala,
  213 Cal. App. 2d (1963) ....................................................................... 10

In re Bank of Am. HAMP,
  2011 U.S. Dist. LEXIS 72079 (D. Mass July 6, 2011) ...................... 11, 12, 14

In re Diego's Inc.,
  88 F.3d 775 (9th Cir. 1996) .................................................................. 15

In re POM Wonderful LLC Mktg. & Sales Prac. Litig.,
  2012 U.S. Dist. LEXIS (C.D. Cal. Sept. 28, 2012) ...................................... 6, 7

Insurance Concepts & Design, Inc. v. Healthplan Services, Inc.,
  785 So. 2d 1232 (Fla. 4th DCA 2001) ......................................................... 12

Intel Corp. v. Advanced Micro Devices, Inc.,
  12 F.3d 908 (9th Cir. 1993) ................................................................... 19

Isaac v. A & B Loan Co.,
  201 Cal. App. 3d 307 (1988) .................................................................. 16

Jackson v. Ocwen Loan Servicing, LLC,
  2011 U.S. Dist. LEXIS 12816 (E.D. Cal. Feb. 8, 2011) ................................. 12

Keilholtz v. Lennox Hearth Prods.,
  268 F.R.D. 330 (N.D. Cal. 2010) ............................................................... 6

Kennedy v. Wells Fargo Bank, N.A.,
  2011 U.S. Dist. LEXIS 111013 (C.D. Cal. Sept. 28, 2011) ............... 10, 13, 14

Loan Modification Group, Inc. v. Reed,
  694 F.3d 145 (1st Cir. 2012) .................................................................... 2

Mazza v. Am. Honda Motor Co.,
  666 F.3d 581 (9th Cir. 2012) ............................................................. 5, 6, 7

McCann v. Foster Wheeler LLC,
  48 Cal. 4th 68 (2010) ............................................................................ 6

Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,
  460 U.S. 1 (1983) ........................................................................... 18, 19

BLOOD HURST & O'REARDON, LLP

00054864

BLOOD HURST & O'REARDON, LLP

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Nakash v. Marciano,
    882 F.2d 1411 (9th Cir. 1989) .......................................................................... 18

Olivares v. PNC Bank, N.A.,
    2011 U.S. Dist. LEXIS 118338 (D. Minn. Oct. 13, 2011) ............................. 14

Pinto v. HSBC Bank, N.A.,
    2012 U.S. Dist. LEXIS 178796 (D. Mass. Dec. 18, 2012) ............................ 15

Pokorny v. Quixtar, Inc.,
    601 F.3d 987 (9th Cir. 2010) ............................................................................ 6

Romo v. Amedex Ins. Co.,
    930 So. 2d 643 (Fla. 3d DCA 2006) ............................................................... 13

Smith v. City & County of S.F.,
    225 Cal. App. 3d 38 (1990) ............................................................................ 13

Stagikas v. Saxon Mortg. Servs.,
    795 F. Supp. 2d 129 (D. Mass. 2011) ............................................................ 11

Sutcliffe v. Wells Fargo Bank, N.A.,
    283 F.R.D. 533, 549 (N.D. Cal. 2012) ....................................................... 8, 15

Sutherland v. Barclays America/Mortg. Corp.,
    53 Cal. App. 4th 299 (1997) ........................................................................... 15

Thul v. OneWest Bank, FSB,
    2013 U.S. Dist. LEXIS 108 (N.D. Ill. Jan. 2, 2013) ................................... 1, 9

Thul v. OneWest Bank, FSB,
    2013 U.S. Dist. LEXIS 7492 (N.D. Ill. Jan. 18, 2013) ................................... 9

Turbeville v. JPMorgan Chase Bank,
    2011 U.S. Dist. LEXIS 42290 (C.D. Cal. Apr. 4, 2011) ............................... 11

U.S. Ecology, Inc. v. State,
    129 Cal. App. 4th 887 (2005) ......................................................................... 13

Vissuet v. Indymac Mortg. Servs.,
    2010 U.S. Dist. LEXIS 26241 (S.D. Cal. Mar. 19, 2010) ............................. 15

Waller v. Truck Ins. Exch., Inc.,
    11 Cal. 4th 1 (1995) ........................................................................................ 12

BLOOD HURST & O'REARDON, LLP

Warren v. Merrill,
  143 Cal. App. 4th 96 (2006) ............................................................................. 15

Wash. Mut. Bank v. Sup. Ct.,
  24 Cal. 4th 906 (2001) ................................................................................... 5, 6

Waterbury v. Safeway, Inc.,
  2006 U.S. Dist. LEXIS 100896 (N.D. Cal. Oct. 31, 2006) ............................. 19

Wershba v. Apple Computer, Inc.,
  91 Cal. App. 4th 224 (2001) ............................................................................. 5

Wigod v. Wells Fargo Bank, N.A.,
  673 F.3d 547 (7th Cir. 2012) .................................................................... passim

Wilcox v. EMC Mortg. Corp.,
  2011 U.S. Dist. LEXIS 82128 (C.D. Cal. July 25, 2011) .................. 10, 13, 11

STATUTES AND OTHER AUTHORITIES

12 U.S.C. §5219 (2010) .................................................................................... 2, 4

California Civil Code §1698 .......................................................................... 15, 16

Restatement (Second) of Contracts, § 205, Comment d (1981) .......................... 12

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1    Plaintiff Lee Birnbaum submits this opposition to Defendant OneWest
2  Bank, FSB's ("OneWest") motion to dismiss (the "Motion to Dismiss").[1]   *See*
3  Doc. No. 10.

4  **I.    INTRODUCTION**

5    OneWest contractually agreed to offer Plaintiff a permanent mortgage loan
6  modification as long as plaintiff fulfilled certain conditions.  The contract, known
7  as the Trial Period Plan Contract ("TPP" or "TPP Contract"), was drafted and
8  offered by OneWest and accepted by Plaintiff.  Plaintiff fulfilled his obligations,
9  but OneWest did not offer the permanent loan modification.

10    In its motion, OneWest fails to cite the most significant cases on this issue,
11  which reject OneWest's arguments –the only federal appellate decision (*Wigod v.*
12  *Wells Fargo Bank, N.A.*, 673 F.3d 547 (7th Cir. 2012)) and the other case
13  involving OneWest (*Fletcher v. OneWest Bank, FSB*, 2012 U.S. Dist. LEXIS
14  15141 (N.D. IL. Oct. 22, 2012)).  This is not the first time OneWest has failed to
15  cite the relevant authority.  On January 3, 2013, another court denied OneWest's
16  motion to dismiss in a related TPP Contract class action (again, not cited in the
17  Motion to Dismiss), and severely criticized OneWest's failure.  *See Thul v.*
18  *OneWest Bank, FSB*, 2013 U.S. Dist. LEXIS 108, at *7-8 (N.D. Ill. Jan. 2, 2013).

19    Plaintiff does not allege that simply obtaining a TPP Contract guarantees a
20  borrower a permanent modification.    Rather, OneWest's TPP Contract
21  "provide[s] that if a borrower meets all of the requirements, receives a TPP
22  Contract and complies with the terms of the TPP Contract, OneWest 'will send
23  me a [permanent] Modification Agreement for my signature which will
24  [permanently] modify my Loan Documents as necessary to reflect this new
25  payment amount and waive any unpaid late charges accrued to date.'"    ¶4

26
27
28  _____
    [1]  "¶" references are to the Complaint.  *See* Doc. No. 1.

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS

BLOOD HURST & O'REARDON, LLP

00054864

1    (quoting, Ex.[2] A at §3).  The very first sentence of the TPP Contract states "If I

2    am in compliance with this Trial Period Plan (the "Plan") and my representations

3    in Section 1 continue to be true in all material respects, then the Lender ***will***

4    ***provide me*** with a Home Affordable Modification Agreement ("Modification

5    Agreement")…that would amend and supplement [my mortgage]."  Ex. A at 1

6    (emphasis added).[3]  Plaintiff alleges that although he complied with the TPP

7    Contract and his representations continued to be true, OneWest never offered

8    him with a permanent modification agreement.  ¶¶3, 5.

9        The Motion to Dismiss should be denied in its entirety.

10   **II.**    **STATEMENT OF FACTS**

11      **A.**    **OneWest's Participation in HAMP**

12       The promised loan modification arises out of the federal Home Affordable

13   Modification Program ("HAMP").  In order to receive billions of dollars in

14   bailout funds from the Troubled Asset Relief Program ("TARP"), banks taking

15   TARP funds were required to offer mortgage loan modifications under the

16   HAMP program to qualified borrowers.

17       HAMP authorized the Treasury Department to enter into Servicer

18   Participation Agreements ("SPAs") with the mortgage servicers, to "facilitate

19   loan modifications and to prevent avoidable foreclosures."  12 U.S.C. §5219

20   (2010).  OneWest took the bailout funds and executed an SPA.  ¶26.  "The aim

21   of HAMP was to assist homeowners on the verge of foreclosure to modify their

22   loans to an affordable level."  *Loan Modification Group, Inc. v. Reed*, 694 F.3d

23   145, 147 (1st Cir. 2012); *see also* U.S. Treasury Department, Supplemental

24   Directive 09-01 at 1 (HAMP is "aimed at helping 3 to 4 million at-risk

25

26

27   [2]  Unless otherwise indicated, "Ex." references are to documents attached to the
Complaint.

28   [3]  *Internal* citations omitted and emphasis in original unless otherwise indicated.

BLOOD HURST & O'REARDON, LLP

homeowners – both those who are in default and those who are at imminent risk of default – by reducing monthly payments to sustainable levels.").[4]

There are two stages to the HAMP program.  Under the first stage, OneWest gathers a borrower's financial and other relevant information and, if the borrower qualifies, offers the borrower a TPP Contract.  ¶28.  In addition to agreeing to new terms and conditions, OneWest's TPP Contract also requires borrowers make three or four consecutive monthly "Trial Period Payments" at a revised rate designed to keep the borrower in his or her home.  ¶¶29-31.  As with any loan, the borrower was also required to supply information to ensure the underwriting requirements were met.  ¶48 (citing TPP Contract at Section 1).  If the borrower executes the TPP Contract, complies with all documentation and representation requirements, and makes all three timely Trial Period Plan monthly payments, the second stage of the HAMP process is triggered, and OneWest must offer the homeowner a new contract with a permanent loan modification.  ¶¶34-36; TPP Contract at 1, Section 3 (OneWest "will send me a [permanent] Modification Agreement for my signature which will [permanently] modify my Loan Documents as necessary to reflect this new payment amount and waive any unpaid late charges accrued to date.").

**B.    OneWest's Breach**

In July 2009, plaintiff contacted OneWest by making a written request for a loan modification under HAMP.  ¶45.  At OneWest's instruction, he sent OneWest all of the information requested to determine if he qualified for a loan modification.  ¶¶46, 48.  In October 2009, plaintiff executed the TPP Contract and sent it to OneWest.  ¶48.  OneWest accepted the TPP Contract.  ¶54; Ex. B.  As directed by OneWest and in accordance with the terms of the TPP Contract,

---

[4]   Supplemental Directive 09-01 is attached as Exhibit 1 to Plaintiff's concurrently filed request for judicial notice.  OneWest also seeks judicial notice of this document. *See* Doc. No. 12.

BLOOD HURST & O'REARDON, LLP

1   plaintiff timely made each of the specified monthly trial plan payments of
2   $4,327.73.   ¶51; Ex. A, §2.   OneWest accepted these payments without
3   qualification or protest.   ¶52.   In reliance on OneWest's promises, Plaintiff
4   continued making timely mortgage payments of $4,327.73 for another five
5   months beyond the three month trial period required by OneWest's TPP
6   Contract. ¶51.  Plaintiff fully complied with all terms of the TPP Contract.  ¶53.

7           Despite his compliance, OneWest never offered plaintiff a permanent
8   modification.  This constitutes a breach of the TPP Contract.  Ex. A at 1 ("If I am
9   in compliance with this Loan Trial Period and my representations in Section 1
10  continue to be true in all material respects, then the Lender will provide me with
11  a Loan Modification Agreement"); *see also id.* at Section 3 ("If I comply with
12  the requirements…the Lender will send me a Modification Agreement for my
13  signature.");  ¶43.   In April 2010, OneWest sent plaintiff a letter stating that
14  plaintiff failed to submit requested documentation.  ¶56; Ex. C.  Upon receiving
15  the April 2010 letter, plaintiff re-submitted the requested documentation.  ¶57.
16  Nevertheless, in July 2010, OneWest sent plaintiff a letter that it was unable to
17  provide him the permanent modification because he did not submit the required
18  documentation.  ¶58; Ex. B.  This is a false pretext, which OneWest also gave to
19  thousands of other borrowers.  ¶¶59-60, 80, 92(h), 105(g)-(j).

20  **III.   ARGUMENT**

21          **A.   A   Choice-of-Law   Analysis   is   Premature,   Nevertheless,
22          California Law Governs Plaintiffs' Claims Regarding the TPP
        Contract**

23          OneWest argues that Florida law applies because plaintiff's mortgage
24  agreement contains a choice-of-law provisions applying Florida law.  Motion to
25  Dismiss at 6-7.  In a footnote, OneWest hedges its argument, stating that "even if
26  the choice-of-law provision did not apply to plaintiff's claims, California's
27  choice-of-law analysis would require the application of Florida law since the
28  mortgaged property is in Florida."  *Id.* at 7 n.9.  First, the choice-of-law provision

BLOOD HURST & O'REARDON, LLP

1    does not apply because the dispute at issue is ***not*** about plaintiff's mortgage
2    agreement – it concerns the completely separate TPP Contract.  Second, under
3    California's choice of law rules, the law of California, as the forum state, is
4    presumed to apply, and it is OneWest's burden to show that it does not.
5    OneWest utterly fails to meet its burden.  Accordingly, California law applies to
6    this action.

7
8    **1.    The Mortgage Agreement's Choice-of-Law Provision
            Does Not Apply Here**

9    OneWest argues that the choice-of-law provision in Plaintiff's mortgage
10   agreement dictates that Florida law should apply to the claims at issue.  Motion
11   to Dismiss at 6-7.  "[T]he trial court should first examine the choice-of-law
12   clause and ascertain whether the advocate of the clause has met its burden of
13   establishing that the various claims [] fall within its scope." *Wash. Mut. Bank v.*
14   *Sup. Ct.*, 24 Cal. 4th 906, 916 (2001).  The choice-of-law provision in the
15   mortgage agreement states that "This Security Instrument shall be governed by
16   federal law and the law of the jurisdiction in which the Property is located." *See*
17   Doc. 12-1, Ex. 1 (Mortgage Agreement), ¶16.  "Security Instrument" is defined
18   as "this document" – the Mortgage Agreement.  *Id.* at 1 (Definitions, (A)).
19   Plaintiff's dispute relates to the TPP Contract – not the previous mortgage
20   agreement.  The choice-of-law provision does not apply to Plaintiff's claims.

21   **2.    OneWest Does Not Meet its Burden**
22   California's choice-of-law rules apply.  *See Mazza v. Am. Honda Motor*
23   *Co.*, 666 F.3d 581, 589 (9th Cir. 2012).  Under these rules, application of
24   California law to non-residents is constitutional so long as California has
25   "significant contact or significant aggregation of contacts" to the claims. *Wash.*
26   *Mut. Bank*, 24 Cal. 4th at 919 (citing *Phillips Petroleum Co. v. Shutts*, 472 U.S.
27   797 (1985).  This is a fact intensive analysis. *See Wershba v. Apple Computer,*
28

BLOOD HURST & O'REARDON, LLP

BLOOD HURST & O'REARDON, LLP

*Inc.*, 91 Cal. App. 4th 224, 242 (2001); *Clothesrigger, Inc. v. GTE Corp.*, 191 Cal. App. 3d 605, 613 (1987).

It is ***Defendants burden*** to satisfy California's "governmental interest test" to prove "that foreign law, rather than California law, should apply." *Mazza*, 666 F.3d at 590 (quoting *Wash. Mut. Bank*, 24 Cal. 4th at 921); *see also In re POM Wonderful LLC Mktg. & Sales Prac. Litig.*, 2012 U.S. Dist. LEXIS, at *9-10 (C.D. Cal. Sept. 28, 2012). Defendant must first show that there is a "material" difference in the laws, as shown "on the facts of this case." *Pokorny v. Quixtar, Inc.*, 601 F.3d 987, 995 (9th Cir. 2010); *Wash. Mut. Bank*, 24 Cal. 4th at 919. Even if a difference in elements of the laws exists, it may not present a material conflict if that element is not at issue in the litigation. *Pokorny*, 601 F.3d at 995; *Wash. Mut. Bank*, 24 Cal. 4th at 919-20; *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022-23 (9th Cir. 1998); *Keilholtz v. Lennox Hearth Prods.*, 268 F.R.D. 330, 341 (N.D. Cal. 2010) (no material variations because they did not "significantly alter the central issue or the manner of proof" in the case). If there is a material difference at issue, defendant must then demonstrate that the other states have an interest in applying their laws. *McCann v. Foster Wheeler LLC*, 48 Cal. 4th 68, 81-82 (2010). Finally, and only if defendant can satisfy the first two steps, should the Court determine which state's interests "would be 'more impaired'" under the governmental interest test if its laws were not applied. *Wash. Mut. Bank*, 24 Cal. 4th at 920. California's choice-of-law analysis must be conducted on a case-by-case basis. *Bruno v. Eckhart Corp.*, 280 F.R.D. 540, 545 (C.D. Cal. 2012) (quoting *Kearney v. Salomon Smith Barney*, 39 Cal. 4th 95, 107–08 (2006)).

OneWest does virtually nothing to meet its burden. It does not contend that application of California law is unconstitutional or perform a governmental interest analysis. It merely cites in a footnote to an unpublished Ninth Circuit opinion and a district court opinion, without analysis. The only reference it

1   makes to the governmental interest test is the statement that the test "would
2   mandate application of Florida law since the two states' consumer-fraud laws
3   clearly conflict," along with a bare citation to *Mazza*.  Motion to Dismiss at 14.

4       Other courts have applied California's choice of law rules to the facts in
5   those cases and have found non-resident plaintiffs may assert, e.g., consumer
6   protection claims under California law.  *See*, *e.g.*, *POM Wonderful*, 2012 U.S.
7   Dist. LEXIS, at *11; *Bruno*, 280 F.R.D. at 545; *Allen v. Hylands, Inc.*, 2012 U.S.
8   Dist. LEXIS 61606, at *5 (C.D. Cal. May 2, 2012); *see also Hanlon*, 150 F.3d at
9   1022-23.  OneWest has not met its burden to compel compliance of  a foreign
10  state's law.

11      **B.    The Complaint Properly Alleges Breach of the TPP Contract**

12      Relying on a mischaracterization of the contract allegations, OneWest
13  makes boilerplate arguments regarding Plaintiff's breach of contract allegations:
14  (1) "OneWest never unconditionally promised to offer a permanent
15  modification;" (2) the TPP Contract does not contain definite and certain terms
16  for a permanent modification; and (3) facts showing "consideration" were not
17  alleged.  Motion to Dismiss at 7-12.

18      **1.    The TPP Contract Constituted a Valid Offer for a**
19      **Permanent Loan Modification**

20      OneWest's first contract-related argument is that the TPP Contract is
21  "merely an application for a loan modification" and by the TPP Contract
22  OneWest never "unconditionally promised to offer a permanent modification."
23  Motion to Dismiss at 7-10.  First, Plaintiff does not allege an "unconditional
24  promise."   Second, Plaintiff alleges that he and class members satisfied the
25  conditions precedent to OneWest's obligation to offer a permanent loan
26  modification.  According to *Wigod*:

27      In two different provisions of the TPP Agreement, paragraph 1 and
28      section 3, Wells Fargo promised to offer Wigod a permanent loan
        modification if two conditions were satisfied: (1) she complied with

BLOOD HURST & O'REARDON, LLP

the terms of the TPP by making timely payments and disclosures; and (2) her representations remained true and accurate. Wigod alleges that she met both conditions and accepted the offer, but that Wells Fargo refused to provide a permanent modification. These allegations state a claim for breach of contract.

673 F.3d at 560; *see also id.* at 562 ("Here the TPP spelled out two conditions precedent to Wells Fargo's obligation to offer a permanent modification…"); *Bosque v. Wells Fargo Bank, N.A.*, 762 F. Supp. 2d 342, 351 (D. Mass. 2011); *Sutcliffe v. Wells Fargo Bank*, *N.A.*, 283 F.R.D. 533, 549 (N.D. Cal. 2012) (collecting cases).

According to the Complaint, "Plaintiff and the members of the Class made their temporary payments and otherwise complied with the TPP Agreements by making their required payments, keeping all information and representations true and accurate in all material respects, and by taking all such other steps necessary under the form TPP Contracts." ¶78. "Rather than extend offers for permanent modification to Plaintiff and the Class members, OneWest, without justification, decided to treat the TPP Contracts as if they were null and void." ¶91.

Under the clear and express terms of the TPP Contract, OneWest promised to provide Plaintiff a permanent loan modification agreement if he satisfied his obligations stated in the TPP Contract. Paragraph 1 provides:

If I am in compliance with this Loan Trial Period and my representations in Section 1 continue to be true in all material respects, then the Lender *will* provide me with a Loan Modification Agreement[.]

Ex. A (TPP Contract) at ¶1 (emphasis added).

In tandem with paragraph 1, in section 3 OneWest again promises to send Plaintiff a permanent loan modification agreement if he complied with the TPP conditions stating:

If I comply with the requirements in Section 2 [Trial Period Payments], and my representations in Section 1 continue to be true

1
2

in all material respects, the Lender *will* send me a Modification Agreement for my signature[.]

3

*Id.* at §3 (emphasis added).

4

This is confirmed by section 2.G which provides in relevant part:

5
6
7

I further understand and agree that the Lender *will not* be obligated or bound to make any modification of the Loan Documents if I fail to meet any one of the requirements under the Plan.

8

*Id.* at §2.G (emphasis added).

9

The language of the TPP Contract is "clear and explicit," promising

10

Plaintiff that OneWest "*will* provide" him with a Loan Modification Agreement

11

and "*will* send" him a permanent modification agreement for his signature upon

12

Plaintiff complying with his obligations under the TPP.  It states the same thing

13

in the negative by warning that OneWest "*will not*" provide a loan modification

14

if Plaintiff fails to meet any of the conditions precedent.  Just this month, the

15

court in *Thul* twice rejected OneWest's argument that its TPP never promised to

16

provide a permanent loan modification.  *Thul*, 2013 U.S. Dist. LEXIS 7492, at

17

*4-5; *Thul v. OneWest Bank, FSB*, 2013 U.S. Dist. LEXIS 7492, at *4-6 (N.D.

18

Ill. Jan. 18, 2013).

19

Plaintiff allegations, which must be taken as true, are that he complied

20

with all conditions of the TPP Contract.  *Ashcroft v. Iqbal*, 556 U.S. 662, 679

21

(2009).   OneWest therefore breached the TPP Contract by failing to send

22

Plaintiff a permanent Loan Modification Agreement for his signature.   ¶4

23

(quoting, Ex. A at §3).

24

### 2.   The TPP Contract Contains Definite and Certain Terms

25

OneWest again mischaracterizes the Complaint in order to argue that the

26

contract does not contain sufficient terms.   Plaintiff alleges that OneWest

27

breached ***the TPP Contract*** (with or without reference to HAMP's detailed

28

modification rules) – a clear contract that governed the trial period.  *Cave v.*

BLOOD HURST & O'REARDON, LLP

BLOOD HURST & O'REARDON, LLP

1   *Saxon Mortg. Servs.*, 2012 U.S. Dist. LEXIS 75276, at *20 (E.D. Pa. May 30,
2   2012) at *20 ("Plaintiffs do not argue that the TPP itself was the contract for a
3   permanent modification, so Saxon's argument misses the mark.") (citing *Bosque*,
4   762 F. Supp. 2d at 352).  Moreover, OneWest promised that if Plaintiff fulfilled
5   his requirements it "will provide" a permanent loan modification whose terms
6   are dictated by the HAMP Guidelines' predetermined formula, but whose
7   monthly amount was estimated to be the same as the trial period rate.[5]  ¶¶4, 31,
8   Ex. A at §2; Pltf's Request for Judicial Notice, Ex. 1 (SD 09-01) at 8-10.  *Wigod*
9   rejected the same argument made here that the TPP did not specify the exact
10  terms of the permanent modification (including the interest rate, principal
11  balance, and loan duration) because "[a]lthough the trial terms were just an
12  'estimate' of the permanent modification terms, the TPP fairly implied that any
13  deviation from them in the permanent offer would also be based on Wells
14  Fargo's application of the established HAMP criteria and formulas."  673 F.3d at
15  564-65.  Thus, the material terms of the TPP Contract are sufficiently specific.

### 3.   The Complaint Properly Alleges Consideration

17  OneWest argues that the Complaint does not allege consideration.  Motion
18  to Dismiss at 11-12.  Consideration exists "if the act or forbearance given or
19  promised as consideration ***differs in any way*** from what was previously due."
20  *House v. Lala*, 213 Cal. App. 2d, 238, 243 (1963).  Consideration may be either a
21  benefit conferred upon the promisor ***or*** a detriment suffered by the promisee."
22  *Asmus v. Pacific Bell*, 23 Cal. 4th 1, 31-32 (2000) (emphasis added).  Here, the

---

24  [5]   A number of cases are on point.  *Bosque*, 762 F. Supp. 2d at 352 ("At a
25  minimum, then, the TPP contains all essential and material terms necessary to
govern the trial period repayments and the parties' related obligations.");
26  *Kennedy*, 2011 U.S. Dist. LEXIS 111013, at *6 ("The terms of the contract are
not indefinite or uncertain; the TPP [Agreement] spells out explicitly the
obligations of each party."); *Wilcox*, 2011 U.S. Dist. LEXIS 82128, at *13-14
27  (same); *Durmic*, 2010 U.S. Dist. LEXIS 124603 at *14-15 (same); *Belyea v.*
*Litton Loan Serv., LLP*, 2011 U.S. Dist. LEXIS 77734, at *25-26 (D. Mass.
28  July 15, 2011) (same).

BLOOD HURST & O'REARDON, LLP

TPP Contract obligated Plaintiff to provide modified monthly payments, send detailed documentation that was not required under the original mortgage, provide financial disclosures under penalty of perjury, promise to undergo credit counseling if asked, make payments into a newly established escrow account, and suffer negative credit implications. ¶¶3, 29-31, 39, 46-48, 51, 61, 98, 101; Ex. A at §§1, 4. By making modified payments, Plaintiff exposed himself to late fees and negative credit consequences. ¶¶61, 101. The court in *Fletcher v. OneWest* rejected the argument OneWest makes again here that the TPP payments do not constitute consideration because they were monies already owed. *Fletcher*, 798 F. Supp. 2d at 932 ("While Fletcher did have a pre-existing duty to pay that amount to OneWest, she actually suffered some detriment by agreeing to pay less than the full amount owed."). *See also Cave*, 2012 U.S. Dist. LEXIS 75276, at *22-23 (agreement to undergo credit counseling was consideration). Moreover, Plaintiff "expended time and energy and made financial disclosures in furtherance of the agreement, which [he] would not have been required to do under the original contract. A detriment constituting consideration includes such 'expenditure of time and energy.'" *Ansanelli v. JPMorgan Chase Bank, N.A.*, 2011 U.S. Dist. LEXIS 32350 at *10-11 (N.D. Cal. Mar. 28, 2011) (quoting *Raedeke v. Gibraltar Savings and Loan Ass'n.*, 10 Cal. 3d 665, 673 (1974)). The new acts and promises also benefitted OneWest, and are sufficient consideration. *Durmic v. J.P. Morgan Chase Bank, NA*, 2010 U.S. Dist. LEXIS 124603 at *11-12 (D. Mass. Nov. 24, 2010); *Wigod*, 673 F.3d at 564 (under the TPP Contract, plaintiff "***undertook multiple obligations beyond her existing legal duty*** to make mortgage payments") (emphasis added).[6]

---

[6]  *See also Turbeville v. JPMorgan Chase Bank*, 2011 U.S. Dist. LEXIS 42290, at *11-12 (C.D. Cal. Apr. 4, 2011); *Wilcox*, 2011 U.S. Dist. LEXIS 82128, at *16-17; *Ansanelli*, 2011 U.S. Dist. LEXIS 32350, at *10-11; *In re Bank of Am. HAMP*, 2011 U.S. Dist. LEXIS 72079, at *14-15; *Bosque*, 762 F. Supp. 2d at 352; *Belyea*, 2011 U.S. Dist. LEXIS 77734, at *24-25; *Stagikas v. Saxon*

BLOOD HURST & O'REARDON, LLP

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## C. Breach of the Covenant of Good Faith and Fair Dealing is Properly Pled

The covenant of good faith and fair dealing is implied in every contract. *Carma Developers (Cal.), Inc. v. Marathon Dev. Cal., Inc.*, 2 Cal. 4th 342, 371 (1992); *Insurance Concepts & Design, Inc. v. Healthplan Services, Inc.*, 785 So. 2d 1232, 1234 (Fla. 4th DCA 2001). The covenant derives from the principle "that neither party will do anything which will injure the right of the other to receive the benefits of the agreement." *Waller v. Truck Ins. Exch., Inc.*, 11 Cal. 4th 1, 36 (1995); *Court Appointed Receiver of Lancer Offshore, Inc. v. Citco Group LTD*, 2011 WL 1233106, at *3 (S.D. Fla. Mar. 30, 2011). OneWest's argument that the TPP Contract is "not a contract for a permanent modification" – even if true – misses the mark, and again mischaracterizes the Complaint. Motion to Dismiss at 12. Plaintiff alleges that OneWest injured his rights to receive the benefits of ***the TPP Contract***, including by "failing to perform loan servicing functions consistent with its responsibilities," "failing to properly supervise its agents and employees…," "routinely demanding information already in its files," "unreasonably delaying in the modification process for the purpose of foreclosing," and failing to communicate with plaintiff about the status of his loan modification. ¶92; *see also* ¶¶79-81; *Cave*, 2012 U.S. Dist. LEXIS 75276, at *27. This alleged conduct constitutes a breach of the implied covenant. *See Restatement (Second) of Contracts*, § 205, Comment d (1981); *Jackson v. Ocwen Loan Servicing, LLC*, 2011 U.S. Dist. LEXIS 12816, at *8-9 (E.D. Cal. Feb. 8, 2011); *Bosque*, 762 F. Supp. 2d at 353-54; *In re Bank of Am. HAMP*, 2011 U.S. Dist. LEXIS 72079, at *16-17 (D. Mass. July 6, 2011); *Durmic*, 2010 U.S. Dist. LEXIS 124603, at *17-18; *Gaudin v. Saxon Mortg. Servs.*, 2011 U.S. Dist. LEXIS 132957, at *10-11 (N.D. Cal. Nov. 17, 2011);

---

*Mortg. Servs.*, 795 F. Supp. 2d 129, 136 (D. Mass. 2011); *Fletcher*, 2011 U.S. Dist. LEXIS 72562, at *13-14.

BLOOD HURST & O'REARDON, LLP

1   *Kennedy v. Wells Fargo Bank, N.A.*, 2011 U.S. Dist. LEXIS 111013, at *7 (C.D.

2   Cal. Sept. 28, 2011); *Belyea*, 2011 U.S. Dist. LEXIS 77734, at *28-29.

3   ### D.   The Complaint States a Claim for Promissory Estoppel

4   OneWest argues that Plaintiff's promissory estoppel claim fails because

5   the TPP did not contain a definite promise.  Motion to Dismiss at 13-14.  The

6   elements for promissory estoppel are (1) a clear and unambiguous promise, (2)

7   reasonable and foreseeable reliance, and (3) a resulting injury.  *U.S. Ecology, Inc.*

8   *v. State*, 129 Cal. App. 4th 887, 901 (2005); *Romo v. Amedex Ins. Co.*, 930 So.

9   2d 643, 650 (Fla. 3d DCA 2006).  Promissory estoppel results from a "promise

10   binding under certain circumstances, without consideration in the usual sense of

11   something bargained for and something given in exchange."  *Garcia v. World*

12   *Savings, FSB,* 183 Cal. App. 4th 1031, 1040-41 (2010).  Plaintiff's allegations

13   plead a "textbook claim" for promissory estoppel (*Wilcox v. EMC Mortg. Corp.*,

14   2011 U.S. Dist. LEXIS 82128, at *20-21 (C.D. Cal. July 25, 2011)) and

15   OneWest should be bound by its promise because it reasonably should have

16   expected "a substantial change of position, either by act or forbearance, in

17   reliance on [its] promise."  *Smith v. City & County of S.F.*, 225 Cal. App. 3d 38,

18   48 (1990); *Aceves v. U.S. Bank, N.A.*, 192 Cal. App. 4th 218, 227 (2011); *Wigod*,

19   673 F.3d at 566.

20   First, OneWest's unambiguous representations constituted a clear

21   contractual agreement with Plaintiff.  The TPP Contract specified that if Plaintiff

22   complied with the conditions of OneWest's offer, OneWest "***will send***" a

23   permanent modification agreement, which "***will modify***" his home loan.  ¶¶4, 35-

24   36, 77; Ex. A at 1 and Section 3.  Plaintiff complied with all necessary

25   conditions.  ¶¶5, 53, 78.  Second, whether Plaintiff reasonably relied on the TPP

26   Contract is a question of fact, not law.  *See Hanson v. Wells Fargo Home*

27

28

*Mortgage*, 2010 U.S. Dist. LEXIS 85629, at *6-7 (E.D. Ark. Aug. 10, 2010).[7] Nevertheless, Plaintiff does allege reasonable reliance on OneWest's promise. ¶¶61 ("Plaintiff did not seek all other modification programs or alternatives to modification…"), 101.   Analyzing these same allegations, the *Wigod* court upheld a promissory estoppel claim because the complaint "alleged a sufficiently clear promise" and provided "evidence of her own reliance."   673 F.3d at 566.

### E.   The Complaint States Claims Under the UCL

Relying solely on its argument that Florida law applies to Plantiff's TPP Contract-related claims, OneWest argues that the claim under California's UCL fails.   Motion to Dismiss at 14-15.   For the reasons stated above, California law applies to Plaintiff's claims.   Accordingly, Plaintiff may pursue his claims under the UCL's unlawful, unfair, and fraudulent prongs.

### F.   The Statute of Frauds Does Not Apply and OneWest Would Be Estopped from Relying on Such a Defense

OneWest argues that the breach of contract claim is barred by the statute of frauds because the TPP Contract does not contain the essential terms of the permanent modification.   Motion to Dismiss at 15-17.   OneWest's argument relies on a mischaracterization that the Complaint alleges OneWest breached a permanent modification agreement.   Plaintiff's contract claims stem from a written contract – the TPP Contract, which contains all of the terms at issue.[8] Moreover, Plaintiff has alleged offer and acceptance of the TPP Contract (indeed

---

[7]   *See also Durmic*, 2010 U.S. Dist. LEXIS 124603, at *18-19; *Kennedy*, 2011 U.S. Dist. LEXIS 111013, at *7-8; *Bosque*. 762 F. Supp. 2d at 353; *In re Bank of Am. HAMP*, 2011 U.S. Dist. LEXIS 72079, at *16; *Allen*, 2011 U.S. Dist. LEXIS 86077, at *24-25; *Dixon v. OneWest Bank, N.A.*, 2011 U.S. Dist. LEXIS 80187, at *38-39 (D. Mass. July 22, 2011).

[8]   OneWest cites one case in support of its statement that "Courts considering TPPs like Mr. Birnbaum's have repeatedly held that claims such as his are barred by the statute of frauds."   Motion at 16 (citing *Olivares v. PNC Bank, N.A.*, 2011 U.S. Dist. LEXIS 118338 (D. Minn. Oct. 13, 2011)).   However, *Olivares* does not mention the statute of frauds.

BLOOD HURST & O'REARDON, LLP

14   Case .No. 2:12-cv-09810-SJO-AJW

OneWest accepted Plaintiff's eight modified payments under the TPP Contract), sufficient to defeat OneWest's argument that its written TPP Contract was not signed by OneWest.  ¶¶47-48, 51-54; *Pinto v. HSBC Bank, N.A.*, 2012 U.S. Dist. LEXIS 178796, at *11 (D. Mass. Dec. 18, 2012); *Sutcliffe*, 283 F.R.D at 551-52. Indeed, the Second District Court of Appeal in an August 2012 decision, used this same reasoning and reached the same result in a similar HAMP contract situation.  *Barroso v. Ocwen Loan Servicing, LLC*, 208 Cal. App. 4th 1001, 1012-13 (2012).

Further, the part performance exception is applicable because there was complete performance by Plaintiff.  ¶¶45-58; *Faulkner v. Onewest Bank, FSB*, 2010 U.S. Dist. LEXIS 59688, at *23 n.4 (N.D. W. Va. June 16, 2010) (part performance exception triggered by acceptance of TPP payments); *Warren v. Merrill*, 143 Cal. App. 4th 96, 113 (2006) (part performance of the oral contract by paying down payment); *Celano v. Dlabal*, 591 So. 2d 653, 654 (Fla. 1st DCA 1991) (it is well established that part performance will remove an oral contract from the statute of frauds).  Plaintiff sent OneWest eight trial period payments, which OneWest accepted without qualification or protest.  ¶¶51-52.

Additionally, OneWest is estopped from asserting the statute of frauds because Plaintiff changed his position in reliance on the TPP Contract.  *In re Diego's Inc.*, 88 F.3d 775, 778 (9th Cir. 1996); *see also Byrne v. Laura*, 52 Cal. App. 4th 1054, 1068 (1997); *Sutherland v. Barclays America/Mortg. Corp.*, 53 Cal. App. 4th 299 (1997); *Vissuet v. Indymac Mortg. Servs.*, 2010 U.S. Dist. LEXIS 26241, at *13-16 (S.D. Cal. Mar. 19, 2010); Civil Code §1698(d); *CX Digital Media v. Smoking Everywhere*, 2011 WL 1102782, at *12 (S.D. Fla. Mar. 23 2011).  Plaintiff was current with his mortgage up until the time he contacted OneWest and their representative told him to fall behind in his mortgage so OneWest could help him.  ¶45.  After Plaintiff fell behind in his mortgage payments, based upon the representations from OneWest, he increased his

obligations to repay his mortgage by incurring penalties, costs and expenses associated with falling behind on his mortgage including a lowered credit score. ¶61.  Plaintiff also did not attempt to sell his home, refinance, or seek other modification alternatives based upon the representations from OneWest.  *Id.*

In *Isaac v. A & B Loan Co.*, 201 Cal. App. 3d 307, 313 (1988), the California Court of Appeal explained: "the doctrine of estoppel to assert the statute of frauds applies where unconscionable injury would result from denying enforcement of the oral contract after one party has been induced by the other seriously to change his position in reliance on the contract."  Here, dismissal based upon the statute of frauds would result in unconscionable injury to Plaintiff and he would lose his home after he was induced to change his position based upon his reliance on statements from OneWest.  *Id*.

Finally, Plaintiff's equitable claims (i.e., promissory estoppel) are not subject to the statute of frauds.  *See Garcia*, 183 Cal. App. 4th at 1041 n.10 ("to the extent appellants' claim is premised on promissory estoppel, neither section 1698 nor the statute of frauds will defeat their claim"); *Hemispherx Biopharma, Inc. v. Mid-South Capital, Inc.*, 690 F.3d 1216, 1229-30 (11th Cir. 2012).

### G.    Plaintiff Properly Alleges Injury

OneWest concedes that Plaintiff "asserts a variety of injuries as a result of OneWest's failure to offer him a permanent loan modification," but it brazenly argues they were all Plaintiff's fault.  Motion to Dismiss at 17-18.  Plaintiff was current on his mortgage until OneWest told him he needed to go delinquent to receive a HAMP modification.  ¶45.  While OneWest's arguments have no place at this stage, consistent with other courts that have found injury alleged under these circumstances, the Complaint alleges that Plaintiff is in a worse position now because of OneWest's unfulfilled promises, both in a direct financial sense and because Plaintiff's reliance on and participation in the TPP Contract cost him the opportunity to pursue other remedies or solutions.  ¶61.

**H.    OneWest's Alternative Argument that the Court Should Stay this Action under the *Colorado River* Doctrine Pending Plaintiff's Foreclosure Proceeding Fails**

OneWest asserts that Plaintiff's claims should be dismissed (or stayed) during the pendency of a Florida state foreclosure proceeding against Mr. Birnbaum.  OneWest does not offer any cogent reason why the Court should stay the class members' TPP Contract claims for breach of contract, violation of the UCL etc., while a state foreclosure action moves forward on entirely separate legal and factual grounds.  OneWest is using the *Colorado River* doctrine as a sword and a shield.  First, OneWest refused to modify Plaintiff's mortgage after it promised to do so, and as a result of its failure to modify, it allowed a separate party, Deutche Bank, to attempt to foreclose on Plaintiff's home.  Now, OneWest is attempting to halt this class action lawsuit which asserts claims against OneWest for its failure to modify, so that Deutche Bank, who is not a party to this lawsuit, can take Plaintiff's home.  OneWest fails to demonstrate the sort of "exceptional circumstances" required for abstention under *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 813, 96 S. Ct. 1236, 47 L. Ed. 2d 483 (1976); *id.* at 819 ("Only the clearest of justifications will warrant dismissal.").

The *Colorado River* doctrine allows the Court to surrender jurisdiction based upon a "careful balancing" of several well-established factors, "'with the balance heavily weighted in favor of exercising jurisdiction.'"  *Daugherty v. Oppenheimer, Inc.*, 2007 U.S. Dist. LEXIS 51781, at *7 (N.D. Cal.  July 5, 2007) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 16 (1983)); *see also Colorado River*, 424 U.S. at 817 (federal courts have a "virtually unflagging obligation … to exercise the jurisdiction given to them" and abstention is only "an extraordinary and narrow exception").  However, this is not such an action.

At the outset, OneWest must demonstrate the two actions are "parallel." The analysis ends there since they are not. The Florida foreclosure action is brought in the name of the "Deutche Bank National Trust Company, As Trustee of the IndyMac Indx Mortgage Trust 2006-AR4" (hereinafter "Deutche Bank"). OneWest Bank, FSB, as the Defendant in the present class action, is a different entity. Thus, there is no overlap between the parties in this instant action. The lack of common parties is fatal to OneWest's assertion that the state and federal actions are "parallel." *See, e.g., Brown v. Pacific Life Ins. Co.,* 462 F.3d 384, 395 n.7 (5th Cir. 2006) (parallel means "'the same parties and the same issues'"). In *Nakash v. Marciano*, 882 F.2d 1411, 1416 (9th Cir. 1989), the Ninth Circuit formulated the parallelism test for this Circuit as one of "'substantial[] similar[ity].'" *Nakash* found substantial similarity existed when "all" of the federal parties were named in the state suit, and the only difference was whether all the parties' corporate entities were named. *Id.* at 1416-17. Here, there is no complete overlap between the parties. Moreover, there is no overlap among the issues. The state foreclosure action will not adjudicate **any** material issues relating to Plaintiff's instant claims for breach of the TPP Contract, promissory estoppel, or violation of the UCL's unlawful, unfair and fraudulent prongs.

Even if the two actions were parallel – which they are not – application of *Colorado River* is inappropriate because the state foreclosure action will not reach or resolve the key issues in the federal class action. In the state court action, Deutche Bank filed a foreclosure case against Mr. Birnbaum to gain ownership of his property and/or the right to sell the property. In this Federal class action, Plaintiff brings this class action lawsuit on behalf of a nationwide class against OneWest alleging breach of the TPP Contract, along with other causes of action, based on OneWest's failure to provide a permanent loan modification agreement. *Moses H. Cone*, 460 U.S. at 28. The Ninth Circuit has expressly held that if the state court action will not **completely resolve** the federal

BLOOD HURST & O'REARDON, LLP

BLOOD HURST & O'REARDON, LLP

1   action, that is dispositive, then the case should not be dismissed or stayed.  *See*
2   *Holder v. Holder*, 305 F.3d 854, 868 (9th Cir. 2002), and *Intel Corp. v. Advanced*
3   *Micro Devices, Inc.*, 12 F.3d 908, 913 (9th Cir. 1993).   As the dismissal
4   OneWest seeks is only one remedy for one cause of action, dismissal must be
5   denied under *Moses H. Cone*, *Holder*, and *Intel*.

6       The *Colorado River* factors are to be applied in a "pragmatic" manner,
7   "with a view to the realities of the case at hand."  *Moses H. Cone*, 460 U.S. at 21.
8   Given the realities of this litigation, the Court should not stay (and certainly
9   should not dismiss) Plaintiff's class action lawsuit simply because Mr. Birnbaum
10  happens to be a party in both the state court foreclosure action brought by
11  Deutche Bank and the Federal Court class action lawsuit against OneWest.[9]

12      In sum, OneWest asks this Court to carve out one remedy from one cause
13  of action for one defendant pursuant to *Colorado River*, despite that: (1) the state
14  and federal actions involve different parties; (2) defendant cannot show the state
15  and federal actions are parallel; (3) the class action encompasses a nationwide
16  class of consumers whereas the state action does not; and (4) a resolution of the
17  state court foreclosure action would not resolve any of the issues in the federal
18  class action lawsuit.  OneWest's argument is, therefore, meritless, and this Court
19  should continue to exercise its jurisdiction over all the claims asserted in this
20  case.

---

[9]   *See, e.g., Daugherty*, 2007 U.S. Dist. LEXIS 51781, at *7 (when applying the *Colorado River* doctrine, a stay is preferable to dismissal, in the event the state forum proves inadequate) (citing *Colorado River*, 424 U.S. at 818-19); *accord De Simas v. Big Lots Stores*, 2007 U.S. Dist. LEXIS 19257, at *19 (N.D. Cal. Mar. 2, 2007) (staying rather than dismissing claim); *Waterbury v. Safeway, Inc.*, 2006 U.S. Dist. LEXIS 100896, at * 4 (N.D. Cal. Oct. 31, 2006) (same).

**IV.    CONCLUSION**

For the forgoing reasons, the Motion to Dismiss should be denied.

Dated: January 29, 2013

BLOOD HURST & O'REARDON, LLP
TIMOTHY G. BLOOD (149343)
THOMAS J. O'REARDON II (247952)

By: _____
TIMOTHY G. BLOOD

701 B Street, Suite 1700
San Diego, CA  92101
Tel:  619-338-1100
Fax:  619-338-1101
tblood@bholaw.com
toreardon@bholaw.com

BALKAN & PATTERSON, LLP
JOHN PATTERSON
601 S. Federal Highway, Suite 302
Boca Raton, FL  33432
Telephone:  561/750-9191
561/750-1574 (fax)
john@balkanpatterson.com

*Attorneys for Plaintiff*

**CERTIFICATE OF SERVICE**

I hereby certify that on January 29, 2013, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the Electronic Mail Notice List.

Executed on January 29, 2013.

    /s/  Timothy G. Blood
TIMOTHY G. BLOOD

BLOOD HURST & O'REARDON, LLP
701 B Street, Suite 1700
San Diego, CA  92101
Telephone:  619/338-1100
619/338-1101 (fax)
tblood@bholaw.com
